**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
Fort Lauderdale Division
www.flsb.uscourts.gov

In re:                                                    Chapter 7

GENEREX BIOTECHNOLOGY CORP,                               Case No. 22-13166-PDR

    Debtor.

_____/

**PRELIMINARY OBJECTION TO THE TRUSTEE'S MOTION FOR ENTRY OF AN
ORDER (I) APPROVING STALKING HORSE BID AND STALKING HORSE EPA, (II)
APPROVING BID PROCEDURES AND BID PROTECTIONS IN CONNECTION WITH
THE SALE OF DEBTOR'S EQUITY IN TWO SUBSIDIARIES, (III) APPROVING THE
FORM AND MANNER OF NOTICE OF SALE, (IV) SCHEDULING AN AUCTION AND
SALE HEARING AND (V) APPROVING THE SALE OF THE EQUITY FREE AND
<u>CLEAR OF LIENS, CLAIMS AND ENCUMBRANCES</u>**

Terry Thompson ("**Thompson**"), Richard Purcell ("**Purcell**"), Dr. Jason Terrell

("**Terrell**") and Anthony Crisci ("**Crisci**") (collectively, the "**Objecting Parties**"), by and through

their undersigned counsel, file this Preliminary[1] Objection to the *Trustee's Motion For Entry Of*

*An Order (I) Approving Stalking Horse Bid And Stalking Horse EPA, (II) Approving Bid*

*Procedures And Bid Protections In Connection With The Sale Of Debtor's Equity In Two*

*Subsidiaries, (III) Approving The Form And Manner Of Notice Of Sale, (IV) Scheduling An*

*Auction And Sale Hearing And (V) Approving The Sale Of The Equity Free And Clear Of Liens,*

*Claims And Encumbrances* [ECF No. 56] (the "**Sale Motion**"), and respectfully state as follows:

---

[1] This Objection is Preliminary, to (a) put the parties on notice that the Trustee is seeking to sell assets not owned by the Debtor, but owned in significant part by the Objecting Parties, and (b) to object to the proposed factual findings in the Sale Procedures Order that seek to establish the contrary. The initial hearing on the Sale Motion is set for a 10 minute non-evidentiary hearing [ECF No. 57]. The Objecting Parties reserve the right to supplement this Objection and file a more fulsome pleading in opposition to the Sale Motion by the proposed deadline of December 16, 2022.

1.     Pursuant to the Sale Motion, the Trustee seeks to sell what it asserts is a 100% ownership interest in Olaregen Therapeutix, Inc. ("**Olaregen**").  The Trustee also seeks factual findings in the proposed Sale Procedures Order (attached as Exhibit 2 to the Sale Motion) that, among other things, the Debtor owns 100% of the outstanding shares in Olaregen and that no other person or entity has any rights, interest or equity in the shares of Olaregen.  As set forth below, that is not correct.

2.     The Trustee also seeks to sell approximately 64 million shares in Antigen Express, Inc. d/b/a NuGenerex Immuno Oncology, Inc. ("**NGIO**"), and similarly, seeks factual findings in the Sale Procedures Order that, among other things, the Debtor owns all of such NGIO shares (the "**NGIO Stock**") and that no other person or entity has any rights, interest or equity in the NGIO Stock.  As set forth below, that is also not correct.

3.     The Objecting Parties, who are former officers of the Debtor and current officers and directors of Olaregen, collectively own (a) approximately 69.5% of the outstanding shares in Olaregen that the Trustee seeks to sell and (b) approximately 27.7 million shares of the 64 million shares in NGIO Stock that the Trustee seeks to sell.

## The Debtor Does Not Own 100% in Olaregen

4.     As set forth in the Sale Motion and in the Debtor's public filings through April 30, 2021, the Trustee asserts that as of February 14, 2020, the Debtor owned 100% of the outstanding shares in Olaregen.  This ownership was effectuated through, among other things, a certain Stock Purchase Agreement, Secured Promissory Note, Pledge and Security Agreement, as amended (the "**Transaction Documents**").

5.     What is not stated in the Sale Motion is the fact that the Debtor defaulted on its obligation to purchase the majority interest in Olaregen for $12 million, and that on October 13,

2021, Oleregen issued and delivered an Official Notice of Default and Termination to the Debtor (the "**Termination Notice**"), which Termination Notice was acknowledged, agreed to and accepted by the Debtor.  *See* **Exhibit "A"**.

6.      Pursuant to the Termination Notice, the purchase of the Olaregen stock as contemplated by the Transaction Documents was terminated and declared null and void.

7.      As a result of the Termination Notice, the Debtor retained only 2,291,234 of the outstanding common shares of Olaregen's 10 million total authorized, issued and outstanding common shares (i.e., approximately 23% of Olaregen).

8.      Shortly following the resignation of Olaregen's former officers and directors, and the subsequent appointment of a new board and officers, on October 11, 2021, Olaregen issued common and preferred stock to its key executives.  This was done to retain such executives due to lack of working capital.  *See* Minutes of Olageren's Board Meeting Dated October 11, 2021, attached as **Exhibit "B"**.

9.      As a result of the forgoing, out of the 10 million in authorized common shares, the following is the ownership of the common stock in Olageren:

- Generex:  2,291,234 shares
- Terry Thompson (President):  2,115,052 shares
- Richard Purcell (Chief R&D Officer):  2,115,052 shares
- Anthony Crisci (Chief Legal Officer): 2,115,052 shares
- Jason Terrell, MD (Chief Medical Officer):  600,000 shares

10.     Moreover, pursuant to the October 11, 2021 board meeting, each of Terry Thompson, Richard Purcell and Anthony Crisci were issued 33,333 shares of Series B Preferred Stock in Olaregen.  *See* **Exhibit "B"**.

### The Debtor Does Not Own 64,153,151 Shares of NGIO Common Stock

11.     Prior to October 22, 2020, the Debtor owned 64,153,151 shares of NGIO common stock.

12.     On October 22, 2020, the Debtor entered into separate agreements titled "Restricted Stock Award Agreement, Settlement Agreement and Release" (the "**Compensation Settlement Agreements**") with certain former key employees of the Debtor, including the Objecting Parties, in order to settle all past due compensation owed from the Debtor to such employees.

13.     In particular, the Debtor entered into the Compensation Settlement Agreements with each of Terry Thompson, Richard Purcell, Dr. Jason Terrell and Anthony Crisci.  Copies of those Compensation Settlement Agreements are attached collectively as **Exhibit "C"**.

14.     Pursuant to the Compensation Settlement Agreements, each of the Objecting Parties were granted a combination of cash and common stock in each of the Debtor and NGIO to resolve the total compensation otherwise due.  Exhibit A to each of the Compensation Settlement Agreements sets for the schedule of cash and stock to be provided to the respective Objecting Party by the Debtor.

15.     As a result of the Compensation Settlement Agreements, out of the 64,153,151 shares of NGIO common stock that were owned by the Debtor, the following shares of NGIO common stock were granted to the Objecting Parties:

- Terry Thompson:  10,862,504 shares
- Richard Purcell:  5,604,259 shares
- Anthony Crisci: 7,869,104 shares
- Jason Terrell, MD:  3,351,791 shares

16.     The Debtor's board of directors approved and ratified the Compensation Settlement Agreements on February 17, 2021, which became effective on March 24, 2021.

17.     As such, the Debtor does not own all of the shares in NGIO it purports to sell.

4

**The Requested Factual Findings in the Proposed Sale Procedures Order**

18.     Notwithstanding the foregoing, the Trustee seeks factual findings in the Sale Procedures Order that the Debtor, among other things, (a) owns 100% of the outstanding shares in Olaregen, and that no other person or entity has any rights, interest or equity in the shares of Olaregen, and (b) owns approximately 64 million shares in NGIO, and that no other person or entity has any rights, interest or equity in the NGIO Stock.

19.     As these proposed findings are directly contrary with the facts set forth herein by the Objecting Parties, any such factual findings in the Sale Procedures Order is inappropriate.  In any event, no such findings should be made at the preliminary hearing on the Sale Motion, which is currently set for a 10 minute non-evidentiary hearing [ECF No. 57].

WHEREFORE, the Objecting Parties, Terry Thompson, Richard Purcell, Dr. Jason Terrell and Anthony Crisci, request that the Court sustain this Preliminary Objection and grant such further relief as is appropriate.

Respectfully submitted this 8th day of November, 2022.

GENOVESE JOBLOVE & BATTISTA, P.A.
*Counsel for Terry Thompson, Richard Purcell, Dr.*
*Jason Terrell and Anthony Crisci*
100 S.E. Second Street, Suite 4400
Miami, Florida 7131
Tel: (305) 349-2300
Fax: (305) 349-2310

By:     /s/ Glenn D. Moses
         Glenn D. Moses, Esq.
         Fla. Bar. No. 174556
         Email: gmoses@gjb-law.com

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that a copy of the foregoing was served via CM/ECF Notification

on this 8th day of November, 2022.

By:     /s/ Glenn D. Moses
             Glenn D. Moses, Esq.
             Fla. Bar. No. 174556
             Email: gmoses@gjb-law.com

# EXHIBIT "A"



October 13, 2021

<u>VIA E-MAIL</u>
Generex Biotechnology Corporation
10102 USA Today Way
Miramar, Florida 33025
Attn: Joseph Moscato, President & Chief Executive Officer
Email: jmoscato@generex.com

Re:    **Official Notice of Default and Termination**.

Dear Mr. Moscato:

I am writing on behalf of Olaregen Therapeutix, Inc. ("Olaregen") with regard to that certain Stock Purchase Agreement (the "Stock Purchase"), Pledge and Security Agreement (the "Pledge") and Secured Promissory Note (the "Note") between Generex Biotechnology Corporation ("Generex") and Olaregen (the Purchase, Pledge and the Note are referred collectively herein as the "Transaction Documents").

<u>Notice of Default</u>. Pursuant to the Note, Generex is in default in accordance with Paragraph 6. Due to the default of the Note, Generex owes Olaregen a total of **$11,479,818.60**, broker down as follows:

| | | |
|---|---|---|
| 1. | Principal: | $9,607,882.77 |
| 2. | Accrued Interest: | $1,120,919.66 |
| 3. | 7% Default Premium Payment: | $751,016.17 |

<u>Notice of Termination</u>. Pursuant to the Stock Purchase, since Generex is in default of the Note, the Stock Purchase is terminated and deemed null and void. Olaregen is owed **3,945,156** Olaregen common shares held by Generex; broken down as follows:

| | | |
|---|---|---|
| 1. | Price Per Olaregen Share: | $3.65 |
| 2. | Note Balance owed to Olaregen: | $11,479,818.60 |
| 3. | Note Balance converted to Olaregen Shares: | 3,145,156 common shares |
| 4. | Claw Back Shares (Liquidated Damages): | 800,000 Olaregen common shares |

Accordingly, this official notice of default and termination letter was sent out by email via Adobe Sign and by signing this letter you mutually agree to the default terms and immediate termination of the Transaction Documents and that the method of notice meets the requirements of the Transaction Documents.

*Signature Page to Follow*

Sincerely,

Terry Thompson (Oct 13, 2021 10:05 CDT)

Terry Thompson
President
Olaregen Therapeutix, Inc.


ACKNOWLEDGED, AGREED AND ACCEPTED:

Joseph Moscato (Oct 13, 2021 23:10 EDT)

Joseph Moscato
President and CEO
Generex Biotechnology Corporation

# Olaregen - Generex Notice of Default and Termination 10.13.2021

Final Audit Report                                                     2021-10-14

| | |
|---|---|
| Created: | 2021-10-13 |
| By: | Generex Legal Department (anthony_crisci@yahoo.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAE5UQ5-MnE-49p5IvM-KO0Du12gZ4I_jp |

## "Olaregen - Generex Notice of Default and Termination 10.13.2021" History

📄 Document created by Generex Legal Department (anthony_crisci@yahoo.com)
2021-10-13 - 2:48:52 PM GMT- IP address: 174.83.13.54

📧 Document emailed to Joseph Moscato (jmoscato@generex.com) for signature
2021-10-13 - 2:49:33 PM GMT

📧 Document emailed to Terry Thompson (terry.thompson.tcs@gmail.com) for signature
2021-10-13 - 2:49:33 PM GMT

📄 Email viewed by Terry Thompson (terry.thompson.tcs@gmail.com)
2021-10-13 - 3:05:03 PM GMT- IP address: 104.28.50.51

✍️ Document e-signed by Terry Thompson (terry.thompson.tcs@gmail.com)
Signature Date: 2021-10-13 - 3:05:43 PM GMT - Time Source: server- IP address: 107.77.233.136

📄 Email viewed by Joseph Moscato (jmoscato@generex.com)
2021-10-13 - 3:09:21 PM GMT- IP address: 67.205.214.91

📄 Email viewed by Joseph Moscato (jmoscato@generex.com)
2021-10-14 - 3:00:46 AM GMT- IP address: 170.250.1.128

✍️ Document e-signed by Joseph Moscato (jmoscato@generex.com)
Signature Date: 2021-10-14 - 3:10:48 AM GMT - Time Source: server- IP address: 170.250.1.128

✅ Agreement completed.
2021-10-14 - 3:10:48 AM GMT

 Adobe Sign

# EXHIBIT "B"

**OLAREGEN THERAPEUTIX INC.**
**Minutes of**
**BOARD OF DIRECTORS**
**TELEPHONIC MEETING**

**October 11, 2021**

**Present:**

> Mr. Terry Thompson – Chairman of the Board and President
> Mr. Richard Purcell – Director and Chief Research and Development Officer
> Mr. Anthony S. Crisci – Director and Chief Legal Officer

**Invited:**  None

1. **Constitution of Meeting**

   All members of the Board of Directors of Olaregen Therapeutix Inc. ("Company" or "Olaregen") having received due notice and a quorum being present, Mr. Thompson deemed the meeting to be properly constituted.  Mr. Thompson presided as Chair and Mr. Crisci as Secretary of the meeting which commenced at 1:00 p.m. EST.

2. **Approval of Previous Meeting Minutes**

   Upon MOTION duly made by Terry Thompson and seconded by Richard Purcell, it is unanimously:

   RESOLVED, that the minutes of the meeting of the Board of Directors held on September 30, 2021, as presented to the members of the Board of Directors at this meeting, are hereby approved.

3. **Litigation Report**

   Anthony Crisci noted that there had been no litigation activity since the last board meeting.

4. **Report on the SPV**

   Terry Thompson reported on the current status of the SPV and the progress of investment banking advisor, Brooks Houghton.

5. **Approval of President and Co-Chief Executive Officer Duties and Powers**

   The Board of Directors redefined the duties and powers for both President and Chief Executive Officer(s) as follows:

1

1. President, unless otherwise provided by the Board:
   a. Shall have the full and sole authority to contractually bind the Company;
   b. Shall have the full and sole authority to oversee all or any part of the Company's assets, including without limitation the control of all money and bank accounts;
   c. Shall have general charge and supervision of the business of the Company;
   d. Shall preside at all meetings of the stockholders, and if he is a director, at all meetings of the Board; and
   e. Shall perform such duties and possess such powers as the Board of Directors may from time to time prescribe.
2. Chief Executive Officer(s), unless otherwise provided by the Board:
   a. Shall report directly to the President of the Company;
   b. Shall perform such duties and possess such powers as the President of the Company may from time to time prescribe; and
   c. The Company may have more than one CEO, with designation as Co-CEO.

Upon MOTION duly made by Terry Thompson and seconded by Richard Purcell, it is unanimously:

RESOLVED, that the redefined duties and powers for both President and Chief Executive Officer(s) as set forth above are hereby approved.

## 6. 2021 Equity Incentive Plan

In order to retain the necessary personnel to effectively operate and grow the Company, the Company thus decided to adopt an equity incentive plan, called the Olaregen Therapeutix Inc. 2021 Equity Incentive Plan (the "Plan"). Anthony Crisci presented the proposed Plan to the Board of Directors.

Anthony Crisci informed the Board of Directors that if approved by the Board of Directors, the Plan will not take effect until approved by the majority of the shareholders of the Company.

Upon MOTION duly made by Terry Thompson and seconded by Richard Purcell, it is unanimously:

RESOLVED, that the Plan as presented (and attached to these minutes) are hereby approved.

## 7. Domestication - Moving from Delaware to Wyoming

In order to save taxes, the Company decided to consider moving its domestication corporation status to Wyoming. The current corporation state status in Delaware is very expensive and unnecessary. Anthony Crisci presented the proposed plan to move to Wyoming to the Board of Directors.

2

Upon MOTION duly made by Terry Thompson and seconded by Richard Purcell, it is unanimously:

RESOLVED, that the Company's domestication status move to Wyoming, once the Company has the necessary funds is hereby approved.

8. **Approval of a 15% Award Pool**

In order to retain the necessary personnel to effectively operate and grow the Company, the Company thus decided to set aside a certain number of "Award" shares, as set forth in the equity incentive plan, called the Olaregen Therapeutix Inc. 2021 Equity Incentive Plan (the "Plan"). NOTE: The Plan was presented and voted upon earlier today. Terry Thompson suggested that the Company set up an Award pool under the Plan equal to 15% of the authorized shares ("Award Pool").

Anthony Crisci informed the Board of Directors that if approved by the Board of Directors, the Award Pool will not take effect until the Plan is approved by the majority of the shareholders of the Company.

Upon MOTION duly made by Terry Thompson and seconded by Richard Purcell, it is unanimously:

RESOLVED, that the Award Pool as presented is hereby approved.

9. **Establishment of a Separate LLC to hold the Company's IP**

The Company informed the Board of Directors of its desire to establish one or more separate LLCs, owned by the Company, to hold the Company's IP.

Anthony Crisci presented the proposed plan to establish one or more separate LLCs, owned by the Company, to hold the Company's IP to the Board of Directors.

Upon MOTION duly made by Terry Thompson and seconded by Richard Purcell, it is unanimously:

RESOLVED, that the plan, as presented, to establish one or more separate LLCs, owned by the Company, to hold the Company's IP is hereby approved.

10. **Issuance of Company Common Stock to Key Executives**

In order to retain the necessary personnel to effectively operate and grow the Company, the Company thus decided to compensate certain key executives with common stock of the Company in order to retain these key executives ("Corporation Stock"). After a lengthy discussion, the Board of Directors agreed.

Upon MOTION duly made by Terry Thompson and seconded by Richard Purcell, it is unanimously:

3

RESOLVED: That the following number of shares of Corporation Stock to the key executives listed below is hereby approved, adopted and ratified in all respects, and that the President of the Company is hereby authorized, empowered and directed, by and on behalf of the Company, to issue, execute and deliver, in the name and on behalf of the Company, the number of shares of Corporation Stock listed below:

| Key Executives | Number of Shares of Corporation Stock |
|---|---|
| 1.  Terry Thompson as President | 2,115,052 common shares |
| 2.  Richard Purcell as Chief R&D Officer | 2,115,052 common shares |
| 3.  Anthony S. Crisci as Chief Legal Officer | 2,115,052 common shares |
| 4.  Jason Terrell, MD as Chief Medical Officer | 600,000 common shares |

RESOLVED FURTHER, that the President and officers authorized by the President be, and each of them with full power to act without the other hereby is, authorized and empowered, for and on behalf of the Company, to cause the Company to perform its obligations under these resolutions and any agreements, instruments or documents executed or delivered in connection therewith; and

FURTHER RESOLVED, that all actions of the officers of the Company previously taken to effect the purpose and intent of the foregoing recitals and resolutions be, and they hereby are, ratified and approved as valid corporate action; and

RESOLVED FURTHER: that each of the officers of the Company be, and they hereby are, authorized and empowered to execute and deliver such documents, instruments and papers and  to take any and all other action as they or any of them may deem necessary or appropriate of the purpose of carrying out the intent of the foregoing resolutions and the transactions contemplated thereby; and that the authority of such officers to execute and deliver any such documents, instruments and papers and to take any such other action shall be conclusively evidenced by their execution and delivery thereof or their taking thereof.

## 11. Issuance of Company Super Voting Preferred Stock to Key Executives

In order to retain the necessary personnel to effectively operate and grow the Company, the Company thus decided to empower certain key executives with Super Voting Preferred Stock of the Company in order to retain these key executives ("Super Voting Stock"). After a lengthy discussion, the Board of Directors agreed to the issuance of the Super Voting Stock and understood that the Certificate of Designation most likely shall be filed with the Wyoming Secretary of State, not Delaware.

Upon MOTION duly made by Terry Thompson and seconded by Richard Purcell, it is unanimously:

WHEREAS, pursuant to the Company's Articles of Incorporation (as amended) and Bylaws (as amended), the Company is authorized to issue up to Two Million (2,000,000) shares of preferred stock, par value $0.001 (the "Preferred Stock"), in one or more series, and the

4

Board is entitled to determine the specific rights, preferences, voting privileges and restrictions of the Preferred Stock or any series thereof;

WHEREAS, the Company is anticipating the issuance of 100,000 shares Series B Super Voting Preferred Stock, par value $0.001 (the "Series B Preferred Stock") to certain key employees as set forth in Exhibit A, attached hereto, (the "Key Employees"), in exchange for the Key Employee's services and dedication to the success of the Company (the "Services"); and

WHEREAS, to permit the Company to effectuate said exchange, the Company is most likely required to file a Certificate of Designation of Series B Preferred Stock with the appropriate Secretary of State.

RESOLVED, that the Certificate of Designation of the Series B Preferred Stock, in substantially the form attached hereto as Exhibit B, shall be adopted, ratified, confirmed, and approved in all respects;

RESOLVED FURTHER, that, the Board of Directors hereby adopted, ratified, confirmed, and approved in all respects the issuance of 100,000 shares of Series B Preferred Stock to the Key Employees as set forth in Exhibit A, attached hereto;

RESOLVED FURTHER, that, the appropriate corporate officers be, and each of them with full authority to act without the others hereby is, authorized and directed for and on behalf of the Company to take or cause to be taken any and all actions, to execute and deliver any and all certificates, instructions, requests, or other instruments, and to do any and all things which, in any such officer's judgment, may be necessary or desirable to effect each of the foregoing resolutions and to carry out the purposes thereof, the taking of any such actions, the execution and delivery of any such certificates, instructions, requests, or instruments, or the doing of any such things to be conclusive evidence of their necessity or desirability; and

RESOLVED FURTHER, that, all actions heretofore taken by the officers of the Company in furtherance of the foregoing resolutions be, and they hereby are, ratified, confirmed, and approved in all respects.

**Termination of Board of Directors Meeting**

Upon motion made by Terry Thompson and seconded by Anthony Crisci, it was unanimously AGREED that the meeting be terminated. The meeting ended at 3:25 p.m.

_____
Anthony S. Crisci, Esq., CPA,
Secretary
Olaregen Therapeutix Inc.

5

**Exhibit A – Key Employees and Number of shares of Series B Preferred Stock to be Issued**

| | Key Executives | Number of Series B Preferred Stock |
|---|---|---|
| 1. | Terry Thompson as President | 33,334 preferred shares |
| 2. | Richard Purcell as Chief R&D Officer | 33,333 preferred shares |
| 3. | Anthony S. Crisci as Chief Legal Officer | 33,333 preferred shares |

Certified by:

_Anthony S. Crisci_

Anthony S. Crisci, Esq., CPA,
Secretary
Olaregen Therapeutix Inc.

6

**Exhibit B - Certificate of Designation of the Series B Preferred Stock**

OLAREGEN THERAPEUTIX INC.

CERTIFICATE OF DESIGNATION OF
SERIES B SUPER VOTING PREFERRED STOCK, SETTING FORTH THE POWERS,
PREFERENCES, RIGHTS, QUALIFICATIONS, LIMITATIONS AND RESTRICTIONS OF
SUCH SERIES OF PREFERRED STOCK

Pursuant to Section 151 of the Delaware General Corporation Law, Olaregen Therapeutix Inc., a Delaware corporation (the "Corporation"), DOES HEREBY CERTIFY:

The Certificate of Incorporation of the Corporation, as amended and restated on August 29, 2018 (the "Charter") confers upon the Board of Directors of the Corporation (the "Board of Directors") the authority to provide for the issuance of shares of preferred stock in series and to establish the number of shares to be included in each such series and to fix or alter the designations, powers and preferences, and relative, participating, optional or other rights, if any, and qualifications, limitations or restrictions thereof. On October 11, 2021, the Board of Directors duly adopted a resolution creating a series of preferred stock having the designation and number of shares and the powers, preferences and rights of the shares of such series, and the qualifications, limitations and restrictions thereof as set forth below:

Section 1. Designation and Number. Of such 2,000,000 shares of Preferred Stock authorized, 100,000 shares are designated as "Series B Super Voting Preferred Stock" (the "Series B Preferred Stock").

Section 2. Dividends. The holders of the Series B Preferred Stock shall not be entitled to receive dividends paid on the Corporation's Common Stock.

Section 3. Liquidation Preference. The holders of the Series B Preferred Stock shall not be entitled to any liquidation preference.

Section 4. Voting. The holders of the Series B Preferred Stock will have the shareholder voting rights as described in this Section 4 or as required by law. For so long as any shares of the Series B Preferred Stock remain issued and outstanding, the holders thereof shall have the right to vote in an amount equal to 3,000 votes per share of Series B Preferred Stock. Except as otherwise required by law or the Certificate of Incorporation, in respect of all matters concerning the voting of shares of capital stock of the Corporation, the Common Stock (and any other class or series of capital stock of the Corporation entitled to vote generally with the Common Stock) and the Series B Preferred Stock shall vote as a single class and such voting rights shall be identical in all respects.

Section 5. Conversion Rights. The holders of the shares of Series B Preferred Stock shall not have any rights hereunder to convert such shares into, or exchange such shares for, shares of any other series or class of capital stock of the Corporation or of any other person.

7

Section 6. Redemption Rights. The shares of the Series B Preferred Stock shall be not be subject to redemption.

Section 7. Amendment. So long as any shares of Series B Preferred Stock are outstanding, the Corporation shall not, without first obtaining the unanimous written consent of the holders of Series B Preferred Stock, alter or change the rights, preferences or privileges of the Series B Preferred Stock so as to affect adversely the holders of Series B Preferred Stock.

Section 8. Notices. Any notice required hereby to be given to the holders of shares of the Series B Preferred Stock shall be deemed if deposited in the United States mail, postage prepaid, and addressed to each holder of record at his, her or its address appearing on the books of the Corporation.

IN WITNESS WHEREOF, Olaregen Therapeutix Inc. has caused this Certificate of Designation to be duly executed in its corporate name on this 11th day of October, 2021.


OLAREGEN THERAPEUTIX INC.


By: _____
Name: Terry Thompson
Title: President

8

# EXHIBIT "C"

**<ins>RESTRICTED STOCK AWARD AGREEMENT, SETTLEMENT AGREEMENT AND RELEASE</ins>**

This Restricted Stock Award, Settlement Agreement and Release (the "<ins>Agreement</ins>") is effective as of October 22,  2020 ("Grant Date") between and among **Generex Biotechnology Corporation** ("<ins>GNBT</ins>") and its subsidiaries ("GNBT Subs") (GNBT and GNBT Subs are hereinafter collectively referred to as "<ins>Generex</ins>") and ___ Terry Thompson ___ (the "<ins>Employee</ins>", collectively with Generex the "<ins>Parties</ins>"), as follows:

<ins>RECITALS</ins>

**WHEREAS**, the Company has determined to grant to the Employee an Award of Restricted Stock as provided herein to encourage the Employee's efforts toward the continuing success of the Company;

**WHEREAS**, the Employee has assisted Generex with its cash flow requirements, the Employee agreed to a defer of payment of a portion of the Employee's salary;

**WHEREAS**, on August 21, 2019, the Generex Board of Directors ("Board") established an Executive Compensation plan that approved the compensation amounts, including bonus amount, set forth in this Agreement ("Board Approved Compensation") and Generex has agreed to provide the Employee with several alternative ways to receive the Board Approved Compensation to reward the Employee for providing such deferral;

**WHEREAS**, as of November __1__ , 2020 the total aggregate amount of compensation including any deferrals of the Employee's salary was ___ $1,616,438.00 ___ (the "<ins>Compensation Amount</ins>"); and

**WHEREAS**, the Parties have agreed that, subject to the terms and conditions set forth in this Agreement, GNBT shall pay cash and/or issue the Employee shares of GNBT and/or

NuGenerex Immuno-Oncology, Inc. ("NGIO") common stock as set forth in **Exhibit A** herein, at the price per share as set forth in **Exhibit A** in full and final settlement of the obligation of Generex to pay the Compensation Amount.

NOW, THEREFORE, in consideration of the promises and mutual covenants set forth herein, intending to be bound, the Parties agree as follows:

1.      Cash; GNBT and/or NGIO Common Stock.  In full and final settlement of Generex's obligation to pay the Compensation Amount, subject to the satisfaction of applicable securities and tax laws, GNBT shall pay cash and/or issue shares of restricted Common Stock of GNBT and/or NGIO to the Employee, and the Employee shall accept, the cash and/or shares of Common Stock of GNBT and/or NGIO as set forth in **Exhibit A**, at a price per share as set forth in **Exhibit A**, which such Common Stock shall be fully vested as of the date set forth in **Exhibit A** (the "Common Stock").

2. Restrictions on Transfer. All shares of GNBT and/or NGIO common stock issued under this Agreement shall be restricted and may not be sold, transferred or otherwise disposed of and may not be pledged or otherwise hypothecated until such date specified in Exhibit A.

3. Representations and Warranties:

    a. Each person signing this Agreement represents and warrants that he or she is duly authorized and has legal capacity to execute and deliver this Agreement. Each Party represents and warrants to the other that the execution and delivery of the Agreement and the performance of such Party's obligations hereunder have been duly authorized and that the Agreement is a valid and legal agreement binding on such Party and enforceable in accordance with its terms.

2

b.  The Employee represents and warrants that he or she is currently an employee of Generex.

c.  The Employee represents, warrants, covenants, and agrees that he or she will only trade the Common Stock in accordance with (i) applicable law, and (ii) GNBT's policy on trading in GNBT securities during blackout periods.

4.      Release by the Employee.  In consideration of the cash payment and issuance of the Common Stock, the receipt and sufficiency of which are acknowledged, the Employee together with his or her predecessors, successors, heirs, administrators, executors, personal representatives, attorneys and assigns (collectively the "Employee Releasors") hereby releases, remises, waives and forever discharges Generex and its predecessors, successors, affiliates, subsidiaries, officers, directors, employees, attorneys, contractors, consultants and their respective heirs, administrators, personal representatives, executors, attorneys and assigns (collectively the "Generex Releasees"), from and against all claims, demands, causes of action, contracts, agreements, liabilities, costs, fees, expenses, actions, agreements, payments, and accounts of every nature and kind, both known and unknown, either at law or in equity, that the Employee Releasors now have, ever has had, or may have had up to and until the date this Agreement is executed by the Parties, whether at law or in equity, arising out of or related to the Compensation Amount and any amounts claimed to be due and owing in relation thereto. Notwithstanding the foregoing, nothing in this Agreement shall be construed as releasing the Generex Releasees from any obligations expressly set forth in this Agreement.

5.      Taxes.  Each Party shall be personally responsible for any and all tax liabilities and consequences, if any, which may result from the cash payment and issuance of the Common Stock

3

made pursuant to this Agreement.  The Parties agree and acknowledge that no Party has made any representations or warranties concerning tax treatment or tax ramifications of any of the payments anticipated under this Agreement.

6.    <u>Withholding of Taxes</u>.  If Generex does not have enough funds, then prior to the delivery to the Employee after the stock has vested in accordance with the term's of this Agreement for any stock certificate or evidence of book entry Shares with respect to any shares of restricted stock issued under this Agreement (the "Restricted Stock") of which all restrictions have lapsed, the Employee shall pay to the Company the federal, state and local income taxes and other amounts as may be required by law to be withheld by the Company (the "Withholding Taxes") with respect to such Restricted Stock.   By executing and returning this Agreement, the Employee shall be deemed to elect to have the Company withhold a portion of such Restricted Stock having an aggregate Fair Market Value equal to the Withholding Taxes in satisfaction of the Withholding Taxes, such election to continue in effect until the Employee notifies the Company before such delivery that the Employee shall satisfy such obligation in cash, in which event the Company shall not withhold a portion of such Restricted Stock as otherwise provided in this Agreement.

7.    <u>Non-Disparagement.</u>  The Parties agree not to make any disparaging statements, directly or indirectly through others, to any person in the future about any other Party, its business, its members, managers, officers, directors, staff, or present or former employees.

8.    <u>Covenant Not to Sue</u>.  The Parties agree and covenant not to commence any administrative proceeding, arbitration action, or any lawsuit in any federal or state or provincial court arising out of or related to any claims released in this Agreement.  This Agreement shall be

4

an affirmative defense to any such claim filed, and shall result in immediate dismissal of any such claim. Any Party that violates this "Covenant Not to Sue" shall reimburse the defending Party all attorneys' fees and costs incurred in defending such action filed in violation of this Agreement.

9. <u>Bankruptcy or Insolvency Proceedings</u>. If Generex shall (i) apply for or consent to the appointment of a receiver, trustee, liquidator or custodian of itself or of all or a substantial part of its property, (ii) admit in writing its inability to pay its debts generally as they mature, (iii) make a general assignment for the benefit of its or any of its creditors, (iv) be dissolved or liquidated, (v) commence a voluntary case or other proceeding seeking liquidation, reorganization or other relief with respect to itself or its debts under any bankruptcy, insolvency or other similar law now or hereafter in effect or consent to any such relief or to the appointment of or taking possession of its property by any official in an involuntary case or other proceeding commenced against it, (vi) be involved in any proceedings for the appointment of a receiver, trustee, liquidator or custodian of the Company, or of all or a substantial part of the property thereof, or an involuntary case or other proceedings seeking liquidation, reorganization or other relief with respect to the Company or any of its subsidiaries, if any, or the debts thereof under any bankruptcy, insolvency or other similar law now or hereafter in effect shall be commenced and an order for relief entered or such proceeding shall not be dismissed or discharged within 45 days of commencement, or (vii) take any action for the purpose of effecting any of the foregoing, and the Employee was not paid in full the Compensation Amount, then the Employee shall be first on the creditors list (or as the law permits) to get paid the remaining Compensation Amount.

10.      <u>Enforcement of Agreement</u>.  The Parties to this Agreement hereby agree that if any of the provisions of this Agreement are breached, the non-breaching Party shall have the right to enforce this Agreement.

11.      <u>Choice of Law</u>.  This Agreement shall be construed in accordance with the laws of the State of New York.

12.      <u>Complete Agreement</u>.   This Agreement represents the final and complete agreement between the Parties regarding the subject matter hereof, and supersedes all previous and contemporaneous communications, representations, understandings and agreements, whether oral or written, between the Parties with respect to the subject matter hereof.

13.      <u>Modification or Amendment</u>.  No change, modification, extension, termination or waiver of any provision of this Agreement shall be valid unless made in writing and signed by a duly authorized representative of the Party to be bound thereby.

14.      <u>Waiver of Breach</u>.  Waiver by any Party hereto of any term and/or breach of this Agreement shall not be deemed or construed as a waiver of any other term and/or breach, whether prior, subsequent, or contemporaneous with this Agreement.

15.      <u>Invalidity</u>.  Should any provision of this Agreement be declared or be determined by any court to be illegal or invalid, the validity of the remaining parts, terms, or provisions shall not be affected thereby and said illegal or invalid part, term or provision shall be deemed not to be a part of this Agreement.

16.      <u>Successors and Assigns</u>.  This Agreement shall be binding upon and inure to the benefit of the Parties and their respective heirs, executors, personal representatives,

administrators, successors, and assigns and upon any entity into or with which any Party hereto may merge or consolidate.

17.    Independent Judgment.  The Parties hereto agree and pledge that in making this Agreement, they rely on their own respective judgment, belief and knowledge, and advice of their own counsel and financial advisors and not on any representations or statements made by any other Party hereto, or any other Party's officers, agents, representatives or counsel.  The Parties acknowledge that the execution hereof is their free act and deed intending to be bound. The Employee acknowledges having been afforded the opportunity to procure independent legal advice in respect of the Employee's execution, delivery, and performance of this Agreement and that the Employee has procured such advice or voluntarily, and without duress, has elected not to seek such advice.

18.    Counterparts.   It is the intention and understanding of each Party that this Agreement shall be executed by each Party or a duly authorized agent of each Party on a separate signature page and that those several signature pages will be assembled, along with the text hereof, to form a single instrument.  Each Party agrees that the resulting documents, and each duplicate original thereof, will have the same force and effect as if each Party had signed the same document at the same time in each other's presence.

19.    No Admission of Liability.  This Agreement is made solely for the purpose of settlement and compromise, and shall not be deemed an admission by any Party.

*Signature Page to Follow*

IN WITNESS WHEREOF, the Parties have signed this Agreement as of the date first written above.

**Generex Biotechnology Corporation**

_Joseph Moscato (Oct 23, 2020 17:29 EDT)_
Name: Joseph Moscato
Title:    President & Chief Executive Officer

**NuGenerex Immuno-Oncology, Inc.**

_Joseph Moscato (Oct 23, 2020 17:29 EDT)_
Name: Joseph Moscato
Title:    Chief Executive Officer

**Employee**

_Terry Thompson_
Terry Thompson (Oct 23, 2020 17:49 CDT)
Name: Terry Thompson

## Exhibit A

**Total Compensation Amount: $1,616,438.00**

o   Accrued Salary: $ 566,438.00____        **(August 21, 2018 through July 31, 2020)**

o   Additional Accrued Salary: $150,000.00___ **(Aug. 1, 2020 through October 31, 2020)**

o   Board Approved Bonus Amount: $ 900,000.00

**Pay Out Schedule:**

1.   Cash Amount:   _$150,000.00_____

   a.   Cash component will be paid no later than December 31, 2020.

2.   Number of restricted shares of GNBT Common Stock ("GNBT Stock"): **2,793,215**

   a.   Cost Basis of GNBT Stock as of the Grant Date: $0.21 per share; $586,575.20 in stock.

   b.   Vesting Date: Later of six months from the date of this Agreement or when the Employee's Lock-Up Agreement terminates; 1/3rd of the shares will vest with the next 1/3rd of shares vesting 6 months from that date and the final 1/3rd of shares vesting 6 months later.

3.   Number of restricted shares of NGIO Common Stock ("NGIO Stock"): **10,862,504**

   a.   Cost Basis of NGIO Stock as of the Grant Date: $0.081 per share; $879,862.80 in stock; NOTE: $0.081 based upon a 409A Valuation.

   b.   Vesting Date: Five months after NGIO is listed on the NASDAQ or equivalent exchange; 1/3rd of the shares will vest with the next 1/3rd of shares vesting 6 months from that date and the final 1/3rd of shares vesting 6 months later.

# Thompson, Terry - Compensation Settlement Agmt 2020 GNBT V6 (10.22.2020) -BOD APPROVED (FINAL)

Final Audit Report                                                                                  2020-10-23

| | |
|---|---|
| Created: | 2020-10-23 |
| By: | Generex Legal Department (acrisci@nugenerex.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAA_nKuwSQvK8G4BS8G1FFLhPR54cFAHDBL |

## "Thompson, Terry - Compensation Settlement Agmt 2020 GNBT V6 (10.22.2020) -BOD APPROVED (FINAL)" History

📄 Document created by Generex Legal Department (acrisci@nugenerex.com)
2020-10-23 - 4:36:07 AM GMT- IP address: 68.191.44.117

📧 Document emailed to Joseph Moscato (jmoscato@nugenerex.com) for signature
2020-10-23 - 4:36:42 AM GMT

📄 Email viewed by Joseph Moscato (jmoscato@nugenerex.com)
2020-10-23 - 9:28:58 PM GMT- IP address: 75.74.60.30

✍️ Document e-signed by Joseph Moscato (jmoscato@nugenerex.com)
Signature Date: 2020-10-23 - 9:29:44 PM GMT - Time Source: server- IP address: 75.74.60.30

📧 Document emailed to Terry Thompson (tthompson@nugenerex.com) for signature
2020-10-23 - 9:29:45 PM GMT

📄 Email viewed by Terry Thompson (tthompson@nugenerex.com)
2020-10-23 - 9:31:39 PM GMT- IP address: 75.55.156.48

✍️ Document e-signed by Terry Thompson (tthompson@nugenerex.com)
Signature Date: 2020-10-23 - 10:49:11 PM GMT - Time Source: server- IP address: 75.55.156.48

✅ Agreement completed.
2020-10-23 - 10:49:11 PM GMT

 Adobe Sign

## RESTRICTED STOCK AWARD AGREEMENT, SETTLEMENT AGREEMENT AND RELEASE

This Restricted Stock Award, Settlement Agreement and Release (the "Agreement") is effective as of October 22,  2020 ("Grant Date") between and among **Generex Biotechnology Corporation** ("GNBT") and its subsidiaries ("GNBT Subs") (GNBT and GNBT Subs are hereinafter collectively referred to as "Generex") and ___ Richard Purcell ___ (the "Employee", collectively with Generex the "Parties"), as follows:

RECITALS

**WHEREAS**, the Company has determined to grant to the Employee an Award of Restricted Stock as provided herein to encourage the Employee's efforts toward the continuing success of the Company;

**WHEREAS**, the Employee has assisted Generex with its cash flow requirements, the Employee agreed to a defer of payment of a portion of the Employee's salary;

**WHEREAS**, on August 21, 2019, the Generex Board of Directors ("Board") established an Executive Compensation plan that approved the compensation amounts, including bonus amount, set forth in this Agreement ("Board Approved Compensation") and Generex has agreed to provide the Employee with several alternative ways to receive the Board Approved Compensation to reward the Employee for providing such deferral;

**WHEREAS**, as of November __1__, 2020 the total aggregate amount of compensation including any deferrals of the Employee's salary was ___ $906,575.00 ___ (the "Compensation Amount"); and

**WHEREAS**, the Parties have agreed that, subject to the terms and conditions set forth in this Agreement, GNBT shall pay cash and/or issue the Employee shares of GNBT and/or

NuGenerex Immuno-Oncology, Inc. ("NGIO") common stock as set forth in **Exhibit A** herein, at the price per share as set forth in **Exhibit A** in full and final settlement of the obligation of Generex to pay the Compensation Amount.

   **NOW, THEREFORE**, in consideration of the promises and mutual covenants set forth herein, intending to be bound, the Parties agree as follows:

   1.      Cash; GNBT and/or NGIO Common Stock.  In full and final settlement of Generex's obligation to pay the Compensation Amount, subject to the satisfaction of applicable securities and tax laws, GNBT shall pay cash and/or issue shares of restricted Common Stock of GNBT and/or NGIO to the Employee, and the Employee shall accept, the cash and/or shares of Common Stock of GNBT and/or NGIO as set forth in **Exhibit A**, at a price per share as set forth in **Exhibit A**, which such Common Stock shall be fully vested as of the date set forth in **Exhibit A** (the "Common Stock").

   2.   Restrictions on Transfer. All shares of GNBT and/or NGIO common stock issued under this Agreement shall be restricted and may not be sold, transferred or otherwise disposed of and may not be pledged or otherwise hypothecated until such date specified in Exhibit A.

   3.   Representations and Warranties:

      a.   Each person signing this Agreement represents and warrants that he or she is duly authorized and has legal capacity to execute and deliver this Agreement. Each Party represents and warrants to the other that the execution and delivery of the Agreement and the performance of such Party's obligations hereunder have been duly authorized and that the Agreement is a valid and legal agreement binding on such Party and enforceable in accordance with its terms.

2

b.  The Employee represents and warrants that he or she is currently an employee of Generex.

c.  The Employee represents, warrants, covenants, and agrees that he or she will only trade the Common Stock in accordance with (i) applicable law, and (ii) GNBT's policy on trading in GNBT securities during blackout periods.

4.    Release by the Employee.  In consideration of the cash payment and issuance of the Common Stock, the receipt and sufficiency of which are acknowledged, the Employee together with his or her predecessors, successors, heirs, administrators, executors, personal representatives, attorneys and assigns (collectively the "Employee Releasors") hereby releases, remises, waives and forever discharges Generex and its predecessors, successors, affiliates, subsidiaries, officers, directors, employees, attorneys, contractors, consultants and their respective heirs, administrators, personal representatives, executors, attorneys and assigns (collectively the "Generex Releasees"), from and against all claims, demands, causes of action, contracts, agreements, liabilities, costs, fees, expenses, actions, agreements, payments, and accounts of every nature and kind, both known and unknown, either at law or in equity, that the Employee Releasors now have, ever has had, or may have had up to and until the date this Agreement is executed by the Parties, whether at law or in equity, arising out of or related to the Compensation Amount and any amounts claimed to be due and owing in relation thereto. Notwithstanding the foregoing, nothing in this Agreement shall be construed as releasing the Generex Releasees from any obligations expressly set forth in this Agreement.

5.    Taxes.  Each Party shall be personally responsible for any and all tax liabilities and consequences, if any, which may result from the cash payment and issuance of the Common Stock

3

made pursuant to this Agreement.  The Parties agree and acknowledge that no Party has made any representations or warranties concerning tax treatment or tax ramifications of any of the payments anticipated under this Agreement.

6.      <u>Withholding of Taxes</u>.  If Generex does not have enough funds, then prior to the delivery to the Employee after the stock has vested in accordance with the term's of this Agreement for any stock certificate or evidence of book entry Shares with respect to any shares of restricted stock issued under this Agreement (the "Restricted Stock") of which all restrictions have lapsed, the Employee shall pay to the Company the federal, state and local income taxes and other amounts as may be required by law to be withheld by the Company (the "Withholding Taxes") with respect to such Restricted Stock.   By executing and returning this Agreement, the Employee shall be deemed to elect to have the Company withhold a portion of such Restricted Stock having an aggregate Fair Market Value equal to the Withholding Taxes in satisfaction of the Withholding Taxes, such election to continue in effect until the Employee notifies the Company before such delivery that the Employee shall satisfy such obligation in cash, in which event the Company shall not withhold a portion of such Restricted Stock as otherwise provided in this Agreement.

7.      <u>Non-Disparagement.</u>  The Parties agree not to make any disparaging statements, directly or indirectly through others, to any person in the future about any other Party, its business, its members, managers, officers, directors, staff, or present or former employees.

8.      <u>Covenant Not to Sue</u>.  The Parties agree and covenant not to commence any administrative proceeding, arbitration action, or any lawsuit in any federal or state or provincial court arising out of or related to any claims released in this Agreement.  This Agreement shall be

4

an affirmative defense to any such claim filed, and shall result in immediate dismissal of any such claim.  Any Party that violates this "Covenant Not to Sue" shall reimburse the defending Party all attorneys' fees and costs incurred in defending such action filed in violation of this Agreement.

9.      Bankruptcy or Insolvency Proceedings.  If Generex shall (i) apply for or consent to the appointment of a receiver, trustee, liquidator or custodian of itself or of all or a substantial part of its property, (ii) admit in writing its inability to pay its debts generally as they mature, (iii) make a general assignment for the benefit of its or any of its creditors, (iv) be dissolved or liquidated, (v) commence a voluntary case or other proceeding seeking liquidation, reorganization or other relief with respect to itself or its debts under any bankruptcy, insolvency or other similar law now or hereafter in effect or consent to any such relief or to the appointment of or taking possession of its property by any official in an involuntary case or other proceeding commenced against it, (vi) be involved in any proceedings for the appointment of a receiver, trustee, liquidator or custodian of the Company, or of all or a substantial part of the property thereof, or an involuntary case or other proceedings seeking liquidation, reorganization or other relief with respect to the Company or any of its subsidiaries, if any, or the debts thereof under any bankruptcy, insolvency or other similar law now or hereafter in effect shall be commenced and an order for relief entered or such proceeding shall not be dismissed or discharged within 45 days of commencement, or (vii) take any action for the purpose of effecting any of the foregoing, and the Employee was not paid in full the Compensation Amount, then the Employee shall be first on the creditors list (or as the law permits) to get paid the remaining Compensation Amount.

10.     Enforcement of Agreement.  The Parties to this Agreement hereby agree that if any of the provisions of this Agreement are breached, the non-breaching Party shall have the right to enforce this Agreement.

11.     Choice of Law.  This Agreement shall be construed in accordance with the laws of the State of New York.

12.     Complete Agreement.  This Agreement represents the final and complete agreement between the Parties regarding the subject matter hereof, and supersedes all previous and contemporaneous communications, representations, understandings and agreements, whether oral or written, between the Parties with respect to the subject matter hereof.

13.     Modification or Amendment.  No change, modification, extension, termination or waiver of any provision of this Agreement shall be valid unless made in writing and signed by a duly authorized representative of the Party to be bound thereby.

14.     Waiver of Breach.  Waiver by any Party hereto of any term and/or breach of this Agreement shall not be deemed or construed as a waiver of any other term and/or breach, whether prior, subsequent, or contemporaneous with this Agreement.

15.     Invalidity.  Should any provision of this Agreement be declared or be determined by any court to be illegal or invalid, the validity of the remaining parts, terms, or provisions shall not be affected thereby and said illegal or invalid part, term or provision shall be deemed not to be a part of this Agreement.

16.     Successors and Assigns.  This Agreement shall be binding upon and inure to the benefit of the Parties and their respective heirs, executors, personal representatives,

administrators, successors, and assigns and upon any entity into or with which any Party hereto may merge or consolidate.

17.     Independent Judgment.  The Parties hereto agree and pledge that in making this Agreement, they rely on their own respective judgment, belief and knowledge, and advice of their own counsel and financial advisors and not on any representations or statements made by any other Party hereto, or any other Party's officers, agents, representatives or counsel.  The Parties acknowledge that the execution hereof is their free act and deed intending to be bound. The Employee acknowledges having been afforded the opportunity to procure independent legal advice in respect of the Employee's execution, delivery, and performance of this Agreement and that the Employee has procured such advice or voluntarily, and without duress, has elected not to seek such advice.

18.     Counterparts.  It is the intention and understanding of each Party that this Agreement shall be executed by each Party or a duly authorized agent of each Party on a separate signature page and that those several signature pages will be assembled, along with the text hereof, to form a single instrument.  Each Party agrees that the resulting documents, and each duplicate original thereof, will have the same force and effect as if each Party had signed the same document at the same time in each other's presence.

19.     No Admission of Liability.  This Agreement is made solely for the purpose of settlement and compromise, and shall not be deemed an admission by any Party.

*Signature Page to Follow*

IN  WITNESS WHEREOF, the Parties have signed this Agreement as of the date first written above.

**Generex Biotechnology Corporation**

Joseph Moscato (Oct 23, 2020 00:46 EDT)

Name:  Joseph Moscato
Title:    President & Chief Executive Officer

**NuGenerex Immuno-Oncology, Inc.**

Joseph Moscato (Oct 23, 2020 00:46 EDT)

Name:  Joseph Moscato
Title:    Chief Executive Officer

**Employee**

Name: Richard Purcell

9

## Exhibit A

**Total Compensation Amount: $906,575.00**

o   Accrued Salary: $ 226,575.00____          **(August 21, 2018 through July 31, 2020)**

o   Additional Accrued Salary: $60,000.00___ **(Aug. 1, 2020 through October 31, 2020)**

o   Board Approved Bonus Amount: $ 620,000.00

**Pay Out Schedule:**

1.  Cash Amount:   _$150,000.00_____

    a.  Cash component will be paid no later than December 31, 2020.

2.  Number of restricted shares of GNBT Common Stock ("GNBT Stock"): **1,441,095**

    a.  Cost Basis of GNBT Stock as of the Grant Date: $0.21 per share;

        $302,630.000  in stock.

    b.  Vesting Date: Later of six months from the date of this Agreement or when the

        Employee's Lock-Up Agreement terminates; 1/3rd of the shares will vest with the

        next 1/3rd of shares vesting 6 months from that date and the final 1/3rd of shares

        vesting 6 months later.

3.  Number of restricted shares of NGIO Common Stock:  **5,604,259**

    a.  Cost Basis of NGIO Stock as of the Grant Date: $0.081 per share; $453,945.00_

        in stock; NOTE: $0.081 based upon a 409A Valuation.

    b.  Vesting Date: Five months after NGIO is listed on the NASDAQ or equivalent

        exchange; 1/3rd of the shares will vest with the next 1/3rd of shares vesting 6

        months from that date and the final 1/3rd of shares vesting 6 months later.

**RESTRICTED STOCK AWARD AGREEMENT, SETTLEMENT AGREEMENT AND RELEASE**

This Restricted Stock Award, Settlement Agreement and Release (the "<u>Agreement</u>") is effective as of October 22,  2020 ("Grant Date") between and among **Generex Biotechnology Corporation** ("<u>GNBT</u>") and its subsidiaries ("GNBT Subs") (GNBT and GNBT Subs are hereinafter collectively referred to as "<u>Generex</u>") and _____Jason Terrell_____ (the "<u>Employee</u>", collectively with Generex the "<u>Parties</u>"), as follows:

<u>RECITALS</u>

**WHEREAS**, the Company has determined to grant to the Employee an Award of Restricted Stock as provided herein to encourage the Employee's efforts toward the continuing success of the Company;

**WHEREAS**, the Employee has assisted Generex with its cash flow requirements, the Employee agreed to a defer of payment of a portion of the Employee's salary;

**WHEREAS**, on August 21, 2019, the Generex Board of Directors ("Board") established an Executive Compensation plan that approved the compensation amounts, including bonus amount, set forth in this Agreement ("Board Approved Compensation") and Generex has agreed to provide the Employee with several alternative ways to receive the Board Approved Compensation to reward the Employee for providing such deferral;

**WHEREAS**, as of November __1__, 2020 the total aggregate amount of compensation including any deferrals of the Employee's salary was ___$638,812.00___ (the "<u>Compensation Amount</u>"); and

**WHEREAS**, the Parties have agreed that, subject to the terms and conditions set forth in this Agreement, GNBT shall pay cash and/or issue the Employee shares of GNBT and/or

NuGenerex Immuno-Oncology, Inc. ("NGIO") common stock as set forth in **Exhibit A** herein, at the price per share as set forth in **Exhibit A** in full and final settlement of the obligation of Generex to pay the Compensation Amount.

NOW, THEREFORE, in consideration of the promises and mutual covenants set forth herein, intending to be bound, the Parties agree as follows:

1.     Cash; GNBT and/or NGIO Common Stock.  In full and final settlement of Generex's obligation to pay the Compensation Amount, subject to the satisfaction of applicable securities and tax laws, GNBT shall pay cash and/or issue shares of restricted Common Stock of GNBT and/or NGIO to the Employee, and the Employee shall accept, the cash and/or shares of Common Stock of GNBT and/or NGIO as set forth in **Exhibit A**, at a price per share as set forth in **Exhibit A**, which such Common Stock shall be fully vested as of the date set forth in **Exhibit A** (the "Common Stock").

2.  Restrictions on Transfer. All shares of GNBT and/or NGIO common stock issued under this Agreement shall be restricted and may not be sold, transferred or otherwise disposed of and may not be pledged or otherwise hypothecated until such date specified in Exhibit A.

3.  Representations and Warranties:

   a.  Each person signing this Agreement represents and warrants that he or she is duly authorized and has legal capacity to execute and deliver this Agreement. Each Party represents and warrants to the other that the execution and delivery of the Agreement and the performance of such Party's obligations hereunder have been duly authorized and that the Agreement is a valid and legal agreement binding on such Party and enforceable in accordance with its terms.

2

b.   The Employee represents and warrants that he or she is currently an employee of Generex.

c.   The Employee represents, warrants, covenants, and agrees that he or she will only trade the Common Stock in accordance with (i) applicable law, and (ii) GNBT's policy on trading in GNBT securities during blackout periods.

4.      Release by the Employee.  In consideration of the cash payment and issuance of the Common Stock, the receipt and sufficiency of which are acknowledged, the Employee together with his or her predecessors, successors, heirs, administrators, executors, personal representatives, attorneys and assigns (collectively the "Employee Releasors") hereby releases, remises, waives and forever discharges Generex and its predecessors, successors, affiliates, subsidiaries, officers, directors, employees, attorneys, contractors, consultants and their respective heirs, administrators, personal representatives, executors, attorneys and assigns (collectively the "Generex Releasees"), from and against all claims, demands, causes of action, contracts, agreements, liabilities, costs, fees, expenses, actions, agreements, payments, and accounts of every nature and kind, both known and unknown, either at law or in equity, that the Employee Releasors now have, ever has had, or may have had up to and until the date this Agreement is executed by the Parties, whether at law or in equity, arising out of or related to the Compensation Amount and any amounts claimed to be due and owing in relation thereto. Notwithstanding the foregoing, nothing in this Agreement shall be construed as releasing the Generex Releasees from any obligations expressly set forth in this Agreement.

5.      Taxes.  Each Party shall be personally responsible for any and all tax liabilities and consequences, if any, which may result from the cash payment and issuance of the Common Stock

3

made pursuant to this Agreement.  The Parties agree and acknowledge that no Party has made any representations or warranties concerning tax treatment or tax ramifications of any of the payments anticipated under this Agreement.

6.      Withholding of Taxes.  If Generex does not have enough funds, then prior to the delivery to the Employee after the stock has vested in accordance with the term's of this Agreement for any stock certificate or evidence of book entry Shares with respect to any shares of restricted stock issued under this Agreement (the "Restricted Stock") of which all restrictions have lapsed, the Employee shall pay to the Company the federal, state and local income taxes and other amounts as may be required by law to be withheld by the Company (the "Withholding Taxes") with respect to such Restricted Stock.   By executing and returning this Agreement, the Employee shall be deemed to elect to have the Company withhold a portion of such Restricted Stock having an aggregate Fair Market Value equal to the Withholding Taxes in satisfaction of the Withholding Taxes, such election to continue in effect until the Employee notifies the Company before such delivery that the Employee shall satisfy such obligation in cash, in which event the Company shall not withhold a portion of such Restricted Stock as otherwise provided in this Agreement.

7.      Non-Disparagement.  The Parties agree not to make any disparaging statements, directly or indirectly through others, to any person in the future about any other Party, its business, its members, managers, officers, directors, staff, or present or former employees.

8.      Covenant Not to Sue.  The Parties agree and covenant not to commence any administrative proceeding, arbitration action, or any lawsuit in any federal or state or provincial court arising out of or related to any claims released in this Agreement.  This Agreement shall be

4

an affirmative defense to any such claim filed, and shall result in immediate dismissal of any such claim.  Any Party that violates this "Covenant Not to Sue" shall reimburse the defending Party all attorneys' fees and costs incurred in defending such action filed in violation of this Agreement.

       9.     <u>Bankruptcy or Insolvency Proceedings</u>.  If Generex shall (i) apply for or consent to the appointment of a receiver, trustee, liquidator or custodian of itself or of all or a substantial part of its property, (ii) admit in writing its inability to pay its debts generally as they mature, (iii) make a general assignment for the benefit of its or any of its creditors, (iv) be dissolved or liquidated, (v) commence a voluntary case or other proceeding seeking liquidation, reorganization or other relief with respect to itself or its debts under any bankruptcy, insolvency or other similar law now or hereafter in effect or consent to any such relief or to the appointment of or taking possession of its property by any official in an involuntary case or other proceeding commenced against it, (vi) be involved in any proceedings for the appointment of a receiver, trustee, liquidator or custodian of the Company, or of all or a substantial part of the property thereof, or an involuntary case or other proceedings seeking liquidation, reorganization or other relief with respect to the Company or any of its subsidiaries, if any, or the debts thereof under any bankruptcy, insolvency or other similar law now or hereafter in effect shall be commenced and an order for relief entered or such proceeding shall not be dismissed or discharged within 45 days of commencement, or (vii) take any action for the purpose of effecting any of the foregoing, and the Employee was not paid in full the Compensation Amount, then the Employee shall be first on the creditors list (or as the law permits) to get paid the remaining Compensation Amount.

10.     Enforcement of Agreement.  The Parties to this Agreement hereby agree that if any of the provisions of this Agreement are breached, the non-breaching Party shall have the right to enforce this Agreement.

11.     Choice of Law.  This Agreement shall be construed in accordance with the laws of the State of New York.

12.     Complete Agreement.  This Agreement represents the final and complete agreement between the Parties regarding the subject matter hereof, and supersedes all previous and contemporaneous communications, representations, understandings and agreements, whether oral or written, between the Parties with respect to the subject matter hereof.

13.     Modification or Amendment.  No change, modification, extension, termination or waiver of any provision of this Agreement shall be valid unless made in writing and signed by a duly authorized representative of the Party to be bound thereby.

14.     Waiver of Breach.  Waiver by any Party hereto of any term and/or breach of this Agreement shall not be deemed or construed as a waiver of any other term and/or breach, whether prior, subsequent, or contemporaneous with this Agreement.

15.     Invalidity.  Should any provision of this Agreement be declared or be determined by any court to be illegal or invalid, the validity of the remaining parts, terms, or provisions shall not be affected thereby and said illegal or invalid part, term or provision shall be deemed not to be a part of this Agreement.

16.     Successors and Assigns.  This Agreement shall be binding upon and inure to the benefit of the Parties and their respective heirs, executors, personal representatives,

6

administrators, successors, and assigns and upon any entity into or with which any Party hereto may merge or consolidate.

17.    <u>Independent Judgment</u>.  The Parties hereto agree and pledge that in making this Agreement, they rely on their own respective judgment, belief and knowledge, and advice of their own counsel and financial advisors and not on any representations or statements made by any other Party hereto, or any other Party's officers, agents, representatives or counsel.  The Parties acknowledge that the execution hereof is their free act and deed intending to be bound. The Employee acknowledges having been afforded the opportunity to procure independent legal advice in respect of the Employee's execution, delivery, and performance of this Agreement and that the Employee has procured such advice or voluntarily, and without duress, has elected not to seek such advice.

18.    <u>Counterparts</u>.  It is the intention and understanding of each Party that this Agreement shall be executed by each Party or a duly authorized agent of each Party on a separate signature page and that those several signature pages will be assembled, along with the text hereof, to form a single instrument.  Each Party agrees that the resulting documents, and each duplicate original thereof, will have the same force and effect as if each Party had signed the same document at the same time in each other's presence.

19.    <u>No Admission of Liability</u>.  This Agreement is made solely for the purpose of settlement and compromise, and shall not be deemed an admission by any Party.

*Signature Page to Follow*

IN WITNESS WHEREOF, the Parties have signed this Agreement as of the date first written above.

**Generex Biotechnology Corporation**

Joseph Moscato (Oct 30, 2020 17:55 EDT)

Name: Joseph Moscato
Title:   President & Chief Executive Officer

**NuGenerex Immuno-Oncology, Inc.**

Joseph Moscato (Oct 30, 2020 17:55 EDT)

Name: Joseph Moscato
Title:   Chief Executive Officer

**Employee**

Name: Jason Terrell

9

## Exhibit A

**Total Compensation Amount: $638,812.00**

o   Accrued Salary: $ 188,812.00____        **(August 21, 2018 through July 31, 2020)**

o   Additional Accrued Salary: $50,000.00___ **(Aug. 1, 2020 through October 31, 2020)**

o   Board Approved Bonus Amount: $ 400,000.00

**Pay Out Schedule:**

1.  Cash Amount:  _$95,822.00_____

    a.  Cash component will be paid no later than December 31, 2020.

2.  Number of restricted shares of GNBT Common Stock ("GNBT Stock"):  **1,292,834**

    a.  Cost Basis of GNBT Stock as of the Grant Date: $0.21 per share; $271,495.10 in
        stock.

    b.  Vesting Date: Later of six months from the date of this Agreement or when the
        Employee's Lock-Up Agreement terminates; 1/3rd of the shares will vest with the
        next 1/3rd of shares vesting 6 months from that date and the final 1/3rd of shares
        vesting 6 months later.

3.  Number of restricted shares of NGIO Common Stock:  **3,351,791**

    a.  Cost Basis of NGIO Stock as of the Grant Date: $0.081 per share; $271,495.10 in
        stock; NOTE: $0.081 based upon a 409A Valuation.

    b.  Vesting Date: Five months after NGIO is listed on the NASDAQ or equivalent
        exchange; 1/3rd of the shares will vest with the next 1/3rd of shares vesting 6
        months from that date and the final 1/3rd of shares vesting 6 months later.

10

**RESTRICTED STOCK AWARD AGREEMENT, SETTLEMENT AGREEMENT AND RELEASE**

This Restricted Stock Award, Settlement Agreement and Release (the "Agreement") is effective as of October 22,  2020 ("Grant Date") between and among **Generex Biotechnology Corporation** ("GNBT") and its subsidiaries ("GNBT Subs") (GNBT and GNBT Subs are hereinafter collectively referred to as "Generex") and ___Anthony Crisci___ (the "Employee", collectively with Generex the "Parties"), as follows:

RECITALS

**WHEREAS**, the Company has determined to grant to the Employee an Award of Restricted Stock as provided herein to encourage the Employee's efforts toward the continuing success of the Company;

**WHEREAS**, the Employee has assisted Generex with its cash flow requirements, the Employee agreed to a defer of payment of a portion of the Employee's salary;

**WHEREAS**, on August 21, 2019, the Generex Board of Directors ("Board") established an Executive Compensation plan that approved the compensation amounts, including bonus amount, set forth in this Agreement ("Board Approved Compensation") and Generex has agreed to provide the Employee with several alternative ways to receive the Board Approved Compensation to reward the Employee for providing such deferral;

**WHEREAS**, as of November __1__, 2020 the total aggregate amount of compensation including any deferrals of the Employee's salary was ___$1,212,329.00___ (the "Compensation Amount"); and

**WHEREAS**, the Parties have agreed that, subject to the terms and conditions set forth in this Agreement, GNBT shall pay cash and/or issue the Employee shares of GNBT and/or

NuGenerex Immuno-Oncology, Inc. ("NGIO") common stock as set forth in **Exhibit A** herein, at the price per share as set forth in **Exhibit A** in full and final settlement of the obligation of Generex to pay the Compensation Amount.

      **NOW, THEREFORE**, in consideration of the promises and mutual covenants set forth herein, intending to be bound, the Parties agree as follows:

      1.     <u>Cash; GNBT and/or NGIO Common Stock</u>.  In full and final settlement of Generex's obligation to pay the Compensation Amount, subject to the satisfaction of applicable securities and tax laws, GNBT shall pay cash and/or issue shares of restricted Common Stock of GNBT and/or NGIO to the Employee, and the Employee shall accept, the cash and/or shares of Common Stock of GNBT and/or NGIO as set forth in **Exhibit A**, at a price per share as set forth in **Exhibit A**, which such Common Stock shall be fully vested as of the date set forth in **Exhibit A** (the "<u>Common Stock</u>").

  2.  <u>Restrictions on Transfer.</u> All shares of GNBT and/or NGIO common stock issued under this Agreement shall be restricted and may not be sold, transferred or otherwise disposed of and may not be pledged or otherwise hypothecated until such date specified in Exhibit A.

  3.  <u>Representations and Warranties</u>:

    a.  Each person signing this Agreement represents and warrants that he or she is duly authorized and has legal capacity to execute and deliver this Agreement. Each Party represents and warrants to the other that the execution and delivery of the Agreement and the performance of such Party's obligations hereunder have been duly authorized and that the Agreement is a valid and legal agreement binding on such Party and enforceable in accordance with its terms.

2

b.  The Employee represents and warrants that he or she is currently an employee of Generex.

c.  The Employee represents, warrants, covenants, and agrees that he or she will only trade the Common Stock in accordance with (i) applicable law, and (ii) GNBT's policy on trading in GNBT securities during blackout periods.

4.    <u>Release by the Employee</u>.  In consideration of the cash payment and issuance of the Common Stock, the receipt and sufficiency of which are acknowledged, the Employee together with his or her predecessors, successors, heirs, administrators, executors, personal representatives, attorneys and assigns (collectively the "<u>Employee Releasors</u>") hereby releases, remises, waives and forever discharges Generex and its predecessors, successors, affiliates, subsidiaries, officers, directors, employees, attorneys, contractors, consultants and their respective heirs, administrators, personal representatives, executors, attorneys and assigns (collectively the "<u>Generex Releasees</u>"), from and against all claims, demands, causes of action, contracts, agreements, liabilities, costs, fees, expenses, actions, agreements, payments, and accounts of every nature and kind, both known and unknown, either at law or in equity, that the Employee Releasors now have, ever has had, or may have had up to and until the date this Agreement is executed by the Parties, whether at law or in equity, arising out of or related to the Compensation Amount and any amounts claimed to be due and owing in relation thereto. Notwithstanding the foregoing, nothing in this Agreement shall be construed as releasing the Generex Releasees from any obligations expressly set forth in this Agreement.

5.    <u>Taxes</u>.  Each Party shall be personally responsible for any and all tax liabilities and consequences, if any, which may result from the cash payment and issuance of the Common Stock

made pursuant to this Agreement.  The Parties agree and acknowledge that no Party has made any representations or warranties concerning tax treatment or tax ramifications of any of the payments anticipated under this Agreement.

6.    <u>Withholding of Taxes</u>.  If Generex does not have enough funds, then prior to the delivery to the Employee after the stock has vested in accordance with the term's of this Agreement for any stock certificate or evidence of book entry Shares with respect to any shares of restricted stock issued under this Agreement (the "Restricted Stock") of which all restrictions have lapsed, the Employee shall pay to the Company the federal, state and local income taxes and other amounts as may be required by law to be withheld by the Company (the "Withholding Taxes") with respect to such Restricted Stock.   By executing and returning this Agreement, the Employee shall be deemed to elect to have the Company withhold a portion of such Restricted Stock having an aggregate Fair Market Value equal to the Withholding Taxes in satisfaction of the Withholding Taxes, such election to continue in effect until the Employee notifies the Company before such delivery that the Employee shall satisfy such obligation in cash, in which event the Company shall not withhold a portion of such Restricted Stock as otherwise provided in this Agreement.

7.    <u>Non-Disparagement.</u>  The Parties agree not to make any disparaging statements, directly or indirectly through others, to any person in the future about any other Party, its business, its members, managers, officers, directors, staff, or present or former employees.

8.    <u>Covenant Not to Sue</u>.  The Parties agree and covenant not to commence any administrative proceeding, arbitration action, or any lawsuit in any federal or state or provincial court arising out of or related to any claims released in this Agreement.  This Agreement shall be

4

an affirmative defense to any such claim filed, and shall result in immediate dismissal of any such claim.  Any Party that violates this "Covenant Not to Sue" shall reimburse the defending Party all attorneys' fees and costs incurred in defending such action filed in violation of this Agreement.

9.      Bankruptcy or Insolvency Proceedings.  If Generex shall (i) apply for or consent to the appointment of a receiver, trustee, liquidator or custodian of itself or of all or a substantial part of its property, (ii) admit in writing its inability to pay its debts generally as they mature, (iii) make a general assignment for the benefit of its or any of its creditors, (iv) be dissolved or liquidated, (v) commence a voluntary case or other proceeding seeking liquidation, reorganization or other relief with respect to itself or its debts under any bankruptcy, insolvency or other similar law now or hereafter in effect or consent to any such relief or to the appointment of or taking possession of its property by any official in an involuntary case or other proceeding commenced against it, (vi) be involved in any proceedings for the appointment of a receiver, trustee, liquidator or custodian of the Company, or of all or a substantial part of the property thereof, or an involuntary case or other proceedings seeking liquidation, reorganization or other relief with respect to the Company or any of its subsidiaries, if any, or the debts thereof under any bankruptcy, insolvency or other similar law now or hereafter in effect shall be commenced and an order for relief entered or such proceeding shall not be dismissed or discharged within 45 days of commencement, or (vii) take any action for the purpose of effecting any of the foregoing, and the Employee was not paid in full the Compensation Amount, then the Employee shall be first on the creditors list (or as the law permits) to get paid the remaining Compensation Amount.

10.     Enforcement of Agreement.  The Parties to this Agreement hereby agree that if any of the provisions of this Agreement are breached, the non-breaching Party shall have the right to enforce this Agreement.

11.     Choice of Law.  This Agreement shall be construed in accordance with the laws of the State of New York.

12.     Complete Agreement.  This Agreement represents the final and complete agreement between the Parties regarding the subject matter hereof, and supersedes all previous and contemporaneous communications, representations, understandings and agreements, whether oral or written, between the Parties with respect to the subject matter hereof.

13.     Modification or Amendment.  No change, modification, extension, termination or waiver of any provision of this Agreement shall be valid unless made in writing and signed by a duly authorized representative of the Party to be bound thereby.

14.     Waiver of Breach.  Waiver by any Party hereto of any term and/or breach of this Agreement shall not be deemed or construed as a waiver of any other term and/or breach, whether prior, subsequent, or contemporaneous with this Agreement.

15.     Invalidity.  Should any provision of this Agreement be declared or be determined by any court to be illegal or invalid, the validity of the remaining parts, terms, or provisions shall not be affected thereby and said illegal or invalid part, term or provision shall be deemed not to be a part of this Agreement.

16.     Successors and Assigns.  This Agreement shall be binding upon and inure to the benefit of the Parties and their respective heirs, executors, personal representatives,

administrators, successors, and assigns and upon any entity into or with which any Party hereto may merge or consolidate.

17.    <u>Independent Judgment</u>.  The Parties hereto agree and pledge that in making this Agreement, they rely on their own respective judgment, belief and knowledge, and advice of their own counsel and financial advisors and not on any representations or statements made by any other Party hereto, or any other Party's officers, agents, representatives or counsel.  The Parties acknowledge that the execution hereof is their free act and deed intending to be bound. The Employee acknowledges having been afforded the opportunity to procure independent legal advice in respect of the Employee's execution, delivery, and performance of this Agreement and that the Employee has procured such advice or voluntarily, and without duress, has elected not to seek such advice.

18.    <u>Counterparts</u>.  It is the intention and understanding of each Party that this Agreement shall be executed by each Party or a duly authorized agent of each Party on a separate signature page and that those several signature pages will be assembled, along with the text hereof, to form a single instrument.  Each Party agrees that the resulting documents, and each duplicate original thereof, will have the same force and effect as if each Party had signed the same document at the same time in each other's presence.

19.    <u>No Admission of Liability</u>.  This Agreement is made solely for the purpose of settlement and compromise, and shall not be deemed an admission by any Party.

*Signature Page to Follow*

8

IN  WITNESS WHEREOF, the Parties have signed this Agreement as of the date first written above.

**Generex Biotechnology Corporation**

_Joseph Moscato (Oct 23, 2020 17:26 EDT)_
_____

Name: Joseph Moscato
Title:    President & Chief Executive Officer

**NuGenerex Immuno-Oncology, Inc.**

_Joseph Moscato (Oct 23, 2020 17:26 EDT)_
_____

Name: Joseph Moscato
Title:    Chief Executive Officer

**Employee**

_____

Name: Anthony Crisci

## Exhibit A

**Total Compensation Amount: $1,212,329.00**

o   Accrued Salary: $ 424,829.00____        **(August 21, 2018 through July 31, 2020)**

o   Additional Accrued Salary: $112,500.00___ **(Aug. 1, 2020 through October 31, 2020)**

o   Board Approved Bonus Amount: $ 675,000.00

**Pay Out Schedule:**

1.   Cash Amount:   $150,000.00_____

   a.   Cash component will be paid no later than December 31, 2020.

2.   Number of restricted shares of GNBT Common Stock ("GNBT Stock"): **2,023,484**

   a.   Cost Basis of GNBT Stock as of the Grant Date: $0.21 per share; $424,931.60  in stock.

   b.   Vesting Date: Later of six months from the date of this Agreement or when the Employee's Lock-Up Agreement terminates; 1/3rd of the shares will vest with the next 1/3rd of shares vesting 6 months from that date and the final 1/3rd of shares vesting 6 months later.

3.   Number of restricted shares of NGIO Common Stock ("NGIO Stock"): **7,869,104**

   a.   Cost Basis of NGIO Stock as of the Grant Date: $0.081 per share; $637,397.40_ in stock; NOTE: $0.081 based upon a 409A Valuation.

   b.   Vesting Date: Five months after NGIO is listed on the NASDAQ or equivalent exchange; 1/3rd of the shares will vest with the next 1/3rd of shares vesting 6 months from that date and the final 1/3rd of shares vesting 6 months later.

# Crisci Anthony- Compensation Settlement Agmt 2020 GNBT V6 (10.22.2020) -BOD APPROVED (FINAL)

Final Audit Report                                                        2020-10-23

| | |
|---|---|
| Created: | 2020-10-23 |
| By: | Generex Legal Department (acrisci@nugenerex.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAA7iFUK_JHlptXTeNe1imDSjUTuJDAZbMF |

## "Crisci Anthony- Compensation Settlement Agmt 2020 GNBT V6 (10.22.2020) -BOD APPROVED (FINAL)" History

🗐 Document created by Generex Legal Department (acrisci@nugenerex.com)
  2020-10-23 - 4:33:58 AM GMT- IP address: 68.191.44.117

🖂 Document emailed to Joseph Moscato (jmoscato@nugenerex.com) for signature
  2020-10-23 - 4:34:37 AM GMT

🗐 Email viewed by Joseph Moscato (jmoscato@nugenerex.com)
  2020-10-23 - 5:26:33 AM GMT- IP address: 75.74.60.30

🖉 Document e-signed by Joseph Moscato (jmoscato@nugenerex.com)
  Signature Date: 2020-10-23 - 9:26:12 PM GMT - Time Source: server- IP address: 75.74.60.30

🖂 Document emailed to Generex Legal Department (acrisci@nugenerex.com) for signature
  2020-10-23 - 9:26:14 PM GMT

🗐 Email viewed by Generex Legal Department (acrisci@nugenerex.com)
  2020-10-23 - 9:51:12 PM GMT- IP address: 68.191.44.117

🖉 Document e-signed by Generex Legal Department (acrisci@nugenerex.com)
  Signature Date: 2020-10-23 - 9:51:36 PM GMT - Time Source: server- IP address: 68.191.44.117

✅ Agreement completed.
  2020-10-23 - 9:51:36 PM GMT

 Adobe Sign