**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Fort Lauderdale Division**
www.flsb.uscourts.gov

In re:                                                                      Chapter 7

GENEREX BIOTECHNOLOGY CORP,                      Case No. 22-13166-PDR

        Debtor.

_____/

**MOTION TO APPROVE SETTLEMENT AND EQUITY PURCHASE AGREEMENT**
**(Hearing to Approve Purchase Offer and Related Relief Requested on January 11, 2023 at 2:00**
**p.m. and Hearing to Approve Settlement Releases requested on January 26, 2023 at 3:00 p.m.)[1]**

      Marc P. Barmat, Chapter 7 Trustee, by and through his undersigned counsel, moves the

Court to approve the Settlement and Equity Purchase Agreement  annexed as **Exhibit 1** hereto

("Settlement Agreement") between the Estate and Terry Thompson, Richard Purcell, Dr. Jason

Terrell, and Anthony Crisci ("Objecting Parties").   The Settlement Agreement resolves the

Preliminary Objection (ECF No. 68)  filed by the Objecting Parties to the Trustee's proposed

sale of Debtor's equity in two entities (ECF No. 56) by providing that the Objecting Parties will

purchase such equity for $1,550,000 on an "as-is, where-is" basis, subject to better or higher

bids.  The Objecting Parties' offer for the equity is better and higher than the current modified

Stalking Horse Bid, is subject to the same deposit and proof of funds requirements as other

bidders pursuant to the bid procedures approved by this Court, and contains provisions that the

Objecting Parties will waive their objection if they fail to provide proof of funds, deposit, or

purchase price.   The Settlement Agreement also provides that if the Objecting Parties

successfully fund the purchase price or waive their objection, they will be entitled to a mutual

---

[1] The Trustee requests the Court hold a hearing to approve the Objecting Parties' purchase offer and for related relief on an expedited basis due to the time sensitivity of the deadlines in the Settlement and Equity Purchase Agreement, namely, the occurrence of the proof of funds deadline on January 13, 2023, and the Court indicated the availability of this date and time for this hearing.  Trustee further requests that the Court hold a hearing to approve the releases in the agreement after twenty-one (21) days' notice has been provided pursuant to Bankruptcy Rule 2004(a)(3).

general releases from the Trustee.  The Trustee believes in his business judgment, that entry into the Settlement Agreement is in the best interests of the Estate, and in support thereof, states as follows:

## I.      Facts Supporting Requested Relief

### A.      *Trustee Proposes Sale of Equity*

1.      On October 14, 2022, Trustee filed a motion which requested that the Court approve the sale of all of the Estate's right, title and interest in the equity of two entities, Olaregen Therapeutix, Inc. ("Olaregen") and Antigen Express, Inc. d/b/a NuGenerex Immuno-Oncology ("NGIO") (collectively, the "Equity"), approve bid procedures for the sale, approve a stalking horse bidder and stalking horse EPA for the sale, subject to better and higher bids, and make certain Equity Findings that were required as a condition of the EPA (the "Bid Procedures Motion") (ECF No. 56).

2.      Specifically, Stalking Horse EPA requested, as a condition of sale, that the Court make certain Equity Findings (as defined by the EPA) to find, *inter alia*, that the Debtor (and thus, the Estate) owns 100% of the equity of Olaregen, and 64,153,151 common stock shares and 100,000 shares of Series A Super Voting Preferred Stock in NGIO.

3.      In the Bid Procedures Motion, the Trustee evidenced the Estate's ownership of the Equity by reference to documents in Debtor's records evidencing agreements by which the Debtor acquired the Equity, and representations in the public filings by the Debtor, a public corporation subject to SEC obligations, which were signed by Debtor's officers and audited by independent auditors.

**B.** **_Objecting Parties Object and Claim to Own Equity_**

4.     However, on November 8, 2022, the Objecting Parties, who allege to be the current officers and directors of Olaregen, filed a preliminary objection to the Bid Procedures Motion (ECF 68).   The Objecting Parties claim that they personally own portions of the Equity, contrary to the Equity Findings sought by Trustee.

5.     The Objecting Parties claim that the Debtor appointed them to be directors and/or officers of Olaregen, Debtor's wholly-owned subsidiary.   After they became officers and directors of Olaregen, the Objecting Parties purportedly took board action to award themselves the majority of Olaregen's common stock as well as the exclusive outstanding preferred shares in an October 11, 2021 meeting (ECF No. 68, 12–19), thus making themselves the majority owners of Olaregen, and giving themselves voting control, at the expense of the parent company, Debtor. The Objecting Parties claim the award of shares was for compensation for future and/or past services, but no capital or consideration was paid for the Olaregen shares granted to the Objecting Parties, and the grant of shares to the Objecting Parties was subject to no minimum employment term or financial objectives.

6.     The Objecting Parties also claim that, by a letter sent on October 13, 2021, Olaregen terminated a stock purchase agreement between Debtor and Olaregen, and clawed back approximately 3.9 million common shares of Olaregen from Debtor. (ECF No. 68, 8–12.) Notably, the termination letter claimed interest due to Olaregen under a promissory note which was not reflected on Debtor's records, purported to claw back more shares than Debtor had even purchased from Olaregen under the stock purchase agreement, (*cf.* ECF No. 63-4), and was sent *after* a New York Court had placed a restraining notice restricting the transfer of any assets of Debtor (of which at least some of the officers of Olaregen were aware).

68067134;2

7.      The Objecting Parties further contend that they personally own portions of NGIO stock that the Estate claims to own, because the Objecting Parties were purportedly awarded certain NGIO stock in October 2020 Settlement Agreements with Debtor which provided that they would receive NGIO stock as deferred compensation, and same would vest after being listed on the NASDAQ or similar exchange. (ECF No. 68, 21–62.)  The Objecting Parties have testified to different positions on whether their interest in NGIO stock are merely options or are full ownership, with vesting only a triggering event for taxation.  These October 2020 Settlement Agreements were allegedly approved by the board of Debtor in a February 2021 meeting and then by formal resolution in March 2021, without any public filings by Debtor, NGIO, or the Objecting Parties, specifically disclosing the awards to Debtor's or NGIO's shareholders.

8.      The Court held a hearing on the Bid Procedures Motion on November 10, 2022. At the hearing, the Court approved the Stalking Horse Bidder and the Stalking Horse EPA, subject to better and higher bids, set the bid procedures for the sale of the Equity, set the Overbid Deadline for January 13, 2023, set the auction to occur on January 17, 2023, and set the final sale hearing to occur on January 20, 2023, at which time the approval of the sale would take place. (ECF No. 69.)  The Court also set an evidentiary hearing on the Preliminary Objection for the same day and time as the final sale hearing, so that any Equity Findings would be determined and incorporated in the final sale order. (ECF No. 70.)

9.      After the entry of the above-referenced Orders, the Trustee commenced discovery of the Objecting Parties concerning their allegations contesting the Equity Findings, including service of discovery requests for production and requests for admission, receipt of discovery responses, and setting of, and preparation for, the examinations of the Objecting Parties.  In analyzing the factual and legal basis for the Objecting Parties' claims, the Trustee has also

68067134;2

reviewed public disclosures filed with the SEC by Debtor and NGIO, records of the Debtor, provided on a remote cloud-based server, and records from Debtor's accountants and auditors. As of the date of this Motion, the Trustee has conducted the examinations of two of the Objecting Parties, and anticipates significant additional discovery from the Objecting Parties if the Equity Findings are litigated on a contested basis.

10.     Concurrently with discovery, the Trustee also engaged in extensive settlement discussions with the Objecting Parties, and their former counsel, since the filing of the Objection.

11.     At a hearing on January 4, 2023, the bid procedure deadlines were modified for the overbid deadline to occur on January 20, 2023, the auction date to occur on January 30, 2023, the sale hearing to occur on January 31, 2023 at 1:30 p.m., and the hearing to determine Equity Findings, if necessary, to occur on February 14, 2023 at 10:00 a.m. (such deadlines being the "Modified Bid Procedure Deadlines").

## II.    The Settlement

12.     On January 3, 2023, Trustee reached a Settlement and Equity Purchase Agreement with the Objecting Parties, subject to this Court's approval, which may resolve the Objection, and moot the need for an evidentiary hearing to determine ownership of the Equity, through a proposed sale of the Equity to the Objecting Parties.

13.     The significant provisions of the Settlement include the following:

a.     Objecting Parties offer $1,550,000 for the "as is, where is" sale, requiring no representations or warranties by the Trustee, for conveyance of all of the Estate's right, title, and interest in: (i) any equity the Estate has in Olaregon and NGIO; and (ii) any claims the Estate has against Olaregon and NGIO.

b.     Objecting Parties' Offer shall be expressly subject to higher or better bids by competing bidders pursuant to modified bid procedures that are expressly subject to Court approval.

      c.      Objecting Parties must provide, on or before January 13, 2023, proof of funds, which demonstrate, in the sole business judgment of the Trustee, the Objecting Parties' financial and other abilities to fund the purchase price.

      d.      Objecting Parties shall tender a deposit in the amount of $150,000 on or before January 18, 2023, which shall be refundable to Objecting Parties in the event the Trustee successfully closes a higher or better offer with a competing bidder.

      e.      In the event Objecting Parties' Offer is the successful bid, the Objecting Parties shall fully fund the offer in the amount of $1,550,000 to the Trustee on or before January 27, 2023.

      f.      The Trustee and Objecting Parties shall exchange mutual general releases conditioned upon the entry of an order not subject to a stay or appeal approving the settlement and either: (i) Trustee's actual receipt of the $1,550,000 of Objecting Parties' Offer; or (ii) Objecting Parties' waiver of their objections to the Equity Findings.

      g.      Objecting Parties' default in timely (i) providing proof of funds, (ii) tendering the deposit; or (ii) timely funding the purchase price, if they are the winning bidder, shall: (a) constitute an express waiver of Objecting Parties' objections to the Equity Findings; and (b) shall require Objecting Parties to execute all documents reasonably necessary to effectuate the conveyance of all equity in Olaregen and NGIO to the party identified by the Trustee as the successful bidder approved by the Court.

      h.      Objecting Parties consent to the Bankruptcy Court reserving jurisdiction to fully adjudicate the Estate's ownership interest in the Olaregen and NGIO Equity in the event that the Objecting Parties are not the successful bidder and do not consent to waive their objections to the Equity Findings.

14.      The foregoing terms are only a summary of the key terms of the Settlement Agreement. The terms of the Settlement Agreement control and all interested parties are urged to review same.

15.      Moreover, the specified deadlines in the Settlement Agreement supersede the Modified Bid Procedure Deadlines for the Objecting Parties only. In other words, the Objecting Parties are still subject to the deadlines specifically provided in the Settlement Agreement, regardless of the Modified Bid Procedure Deadlines.

68067134;2

### III.    Legal Standard for Settlement

16.    Before addressing the substantive issues, the Trustee reiterates that the Settlement Agreement arose from extensive settlement discussions between the Objecting Parties, their counsel, and Trustee's counsel, over a period of nearly two months, culminating in the execution of the Settlement, subject to this Court's approval. The Settlement was negotiated at arm's-length and approval is in accord with the strong public policy which favors pre-trial settlement in all types of litigation. *In re Grau*, 267 B.R. 896, 899 (Bankr. S.D. Fla. 2001).

17.    Bankruptcy Rule 9019(a) provides: "On motion . . . and after a hearing on notice to creditors, the debtor . . . and to such other entities as the court may designate, the court may approve a compromise or settlement."

18.    Section 363 of the Bankruptcy Code provides that a trustee may sell property other than in the ordinary course of business after notice and hearing. *See* 11 U.S.C. § 363.

19.    As this Court has previously found, "approval of a settlement in a bankruptcy proceeding is within the sound discretion of the Court, and will not be disturbed or modified on appeal unless approval or disapproval is an abuse of discretion." *In re Arrow Air, Inc*., 85 B.R. 886, 891 (Bankr. S.D. Fla. 1988) (citing *Rivercity v. Herpel* (*In re Jackson Brewing Co*.), 624 F.2d 599, 602-03 (5th Cir. 1980); *Anaconda-Ericsson, Inc. v. Hessen* (*In re Teltronics Servs., Inc*.), 762 F.2d 185, 189 (2d Cir. 1985) (hereinafter, "*Teltronics*"); *In re Prudence Co*., 98 F.2d 559 (2d Cir. 1938), *cert. denied sub nom. Stein v. McGrath*, 306 U.S. 636 (1939)).

20.    The test is whether the proposed settlement "falls below the 'lowest point in the range of reasonableness.'" *In re Arrow Air, Inc.*, 85 B.R. at 891 (quoting *Teltronics*, 762 F.2d at 189; *Cosoff v. Rodman* (*In re W.T. Grant Co*.), 699 F.2d 599, 608 (2d Cir. 1983), *cert. denied*, 464 U.S. 822 (1983)).

21. Under Eleventh Circuit precedent, when a bankruptcy court decides whether to approve or disapprove a proposed settlement, it must consider:

      a.     the probability of success in the litigation;

      b.     the difficulties, if any, to be encountered in the matter of collection;

      c.     the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and

      d.     the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

*Wallis v. Justice Oaks II, Ltd. (In re Justice Oaks II. Ltd.),* 898 F.2d 1544, 1549 (11th Cir. 1990) (citing sources omitted).

22. In exercising its review under Bankruptcy Rule 9019, a bankruptcy court gives weight to a Trustee's sound business judgment. *See, e.g., In re Southeast Banking Corp.*, 314 B.R. 250, 273 (Bankr. S.D. Fla. 2004) (noting a court gives "weight to the trustee's informed judgment" in considering a settlement under Bankruptcy Rule 9019); *Abeles v. Infotechnology, Inc. (In re Infotechnology, Inc.)*, 89 F.3d 825 (2d Cir. 1995) (noting that in determining whether to approve a debtor's motion to settle a controversy, a court does not substitute its judgment for that of the debtor in possession).

23. In the instant case, each of the four *Justice Oaks* factors weighs heavily in favor of approval of the Agreement.

### A. *Probability of Success in Litigation*

24. The Trustee believes that approving the Settlement Agreement is in the best interests of the Estate, because the probability of success in potentially litigating claims against the Objecting Parties is uncertain, and the Settlement Agreement only provides the releases of

the Objecting Parties in exchange for value given by the Objecting Parties, either in the form of the purchase of the Equity on an "as is" basis for $1.55 million, or in the form of waiver of their Objection such that another bidder can purchase the Equity with Equity Findings.

25.    The potential claims that would be released for value given include claims for preferences, fraudulent transfers, and breach of fiduciary duty.  For example, payments made to the Objecting Officers total $241,080 in the year prior to the petition date based on Debtor's records.  While the Trustee is confident that many of the potential claims against the Objecting Parties are meritorious, the Trustee is aware that the Objecting Parties will assert defenses to the claims released, including that reasonably equivalent value was provided for the payments in the form of services provided, that the payments were made in the ordinary course of business as compensation, and that any breach would be protected by the business judgment rule. Accordingly, despite the probability of success, because the releases are not triggered unless value is provided for the releases, the Trustee believes that this factor weighs in favor of approval of the Settlement Agreement.

### B.    *Difficulties of Collection*

26.    The *Justice Oaks* factor concerning difficulty of collection also weighs in favor of the Settlement Agreement.

27.    Based on the information provided to the Trustee thus far, the Objecting Officers have claimed to be unpaid by the Debtor, NGIO, or Olaregen for a number of years, and have limited or no gainful employment other than their current role with Olaregen.  One of the Objecting Officers claimed he did not even own a working device with a camera (for purposes of his examination), and specifically claimed to be impoverished.  Thus, even if the Trustee were to

pursue the Objecting Officers for claims against them, the collectability of the Objecting Officers is in serious doubt.

### C.    *Complexity, Expense, Inconvenience and Delay*

28.    The potential claims against the Objecting Parties and the transactions alleged by the Objecting Parties that contrast with the Equity Findings (which Trustee contends constitute, at a minimum, a breach of fiduciary duty rendering such transactions voidable, if not void *ab initio*) involve a series of facts spanning an extended period of time and involving a number of individuals.  The Objecting Parties and other fact witnesses are located across many different states.  The Trustee would also have to continue to pursue discovery of documents, which will likely necessitate motions to compel based on what discovery has been provided thus far.  The Trustee has operated primarily under documents publicly available, and the documents within Debtor's records, which are voluminous but not organized or current.  The costs attendant to litigate the Equity Findings, and any claims against the Objecting Parties, will be significant.

### D.    *Paramount Interests of Creditors*

29.    Lastly, the Trustee believes that the Settlement Agreement is in the best interests of creditors because (1) the sale of the Equity is still subject to higher or better bids, which will permit another competing bidder (of which there are at least two) to bid for the Equity and maximize the return for the Estate, and (2) the settlement provides for a potential sale where Objecting Parties would waive the Equity Findings if the Objecting Parties default, which allows for the maximum upside possibility for the Estate.  Therefore, the Settlement Agreement establishes a floor for the Equity on an "as is" basis, while not limiting the potential upside for higher or better bids, and providing for the possibility that a hearing to obtain Equity Findings will be unnecessary.

68067134;2

**IV.    Notice**

30.    The Trustee will serve this Motion on all appropriate parties and will file a separate certificate of service identifying the specific parties served with this Motion and the Notice of Hearing when issued.  The Trustee requests that the Court make a determination that all necessary parties have received the requisite notice.

31.    As referenced in note 1 *supra*, the Trustee requests an expedited hearing for Court approval of the Objecting Parties' purchase offer, including enforcement of the deadlines and conditions for default in the terms of the Settlement Agreement, and set a hearing for approval of the releases in the Settlement Agreement, subject to 21 days' notice.

32.    Assuming that the Settlement Agreement is approved, the Trustee seeks authority to: (a) take such actions; and (b) execute such documents, as it deems reasonable, necessary and/or desirable to effectuate the Settlement Agreement.

33.    Finally, assuming that the Settlement Agreement is approved, the Trustee requests that the Court retain sole and exclusive personal and subject matter jurisdiction to: (a) interpret, implement and enforce (i) the terms and conditions of the Settlement Agreement, the Motion and the Order approving, and (ii) all related matters; and (b) adjudicate any and all disputes of any type arising from or related to (i) the Settlement Agreement, this Motion and the Order approving, and (ii) all related matters.

**WHEREFORE**, the Trustee requests the Court enter an Order: (i) on an expedited basis, approving the terms of the Objecting Parties' purchase offer contained in the Settlement Agreement, enforcing the deadlines therein and the conditions for default, and related relief, (ii) after 21 days' notice to creditors, approving the release terms of the Settlement Agreement, (iii)

11

finding that the notice provided to interested parties of the hearings for approval is sufficient under the circumstances, and (iv) for all other relief that is just and proper.

Dated: January 4, 2023                      Respectfully submitted,


By: */s/ Eyal Berger*
Eyal Berger, Esq.
Florida Bar No.: 011069
Email: eyal.berger@akerman.com
AKERMAN LLP
201 East Las Olas Boulevard, Suite 1800
Fort Lauderdale, FL 33301-2999
Tel: 954-463-2700
Fax: 954-463-2224
-and-

Amanda Klopp, Esq.
Florida Bar No. 124156
Email: amanda.klopp@akerman.com
AKERMAN LLP
777 South Flagler Drive, Suite 1100, West Tower
West Palm Beach, FL 33401
Tel: 561-653-5000
Fax: 561-659-6316

*Counsel for the Trustee*

68067134;2

Exhibit 1

## SETTLEMENT AND EQUITY PURCHASE AGREEMENT

This Settlement and Equity Purchase Agreement is entered into as of the Effective Date by and between Marc Barmat, in his capacity as Chapter 7 Trustee ("Trustee") of Generex Biotechnology, Inc. ("Debtor") and the Debtor's Chapter 7 Bankruptcy Estate in Debtor's Chapter 7 Bankruptcy Case filed on April 23, 2022 under Case No. 22-13166-PDR in the U.S. Bankruptcy Court for the Southern District of Florida, Fort Lauderdale Division, on the one hand, and Terry Thompson, Richard Purcell, Dr. Jason Terrell, and Anthony Crisci (collectively, the "Objecting Parties"), on the other hand.

## RECITALS

**WHEREAS**, on October 14, 2022, the Trustee filed his *Motion for Entry of an Order (I) Approving Stalking Horse Bid and Stalking Horse EPA, (II) Approving Bid Procedures and Bid Protections in Connection with the Sale of Debtor's Equity in Two Subsidiaries, (III) Approving the Form and Manner of Notice of Sale, (IV) Scheduling an Auction and Sale Hearing and (V) Approving the Sale of the Equity Free and Clear of Liens, Claims, and Encumbrances* (ECF No. 56)[1] ("Bid Procedures Motion"), in which he seeks approval to sell all of the Debtor's shares and stock of Antigen Express, Inc. d/b/a NuGenerex Immuno-Oncology, Inc. ("NGIO") and Olaregen Therapeutix, Inc. ("Olaregen"), and certain findings related to the number and percentage of common and preferred shares owned by Debtor in NGIO and Olaregen ("Equity Findings");

**WHEREAS**, on November 8, 2022, the Objecting Parties filed their *Preliminary Objection to the Trustee's Motion for Entry of an Order (I) Approving Stalking Horse Bid and Stalking Horse EPA, (II) Approving Bid Procedures and Bid Protections in Connection with the Sale of Debtor's Equity in Two Subsidiaries, (III) Approving the Form and Manner of Notice of Sale, (IV) Scheduling an Auction and Sale Hearing and (V) Approving the Sale of the Equity Free and Clear of Liens, Claims, and Encumbrances* (ECF No. 68) ("Objection"), by which the Objecting Parties contested certain of the Equity Findings sought by the Motion;

**WHEREAS**, on November 17, 2022, the Court entered its *Order (I) Approving Stalking Horse Bid and Stalking Horse EPA, (II) Approving Bid Procedures and Bid Protections in Connection with the Sale of Debtor's Equity in Two Subsidiaries, (III) Approving the Form and Manner of Notice of Sale, (IV) Scheduling an Auction and Sale Hearing and (V) Approving the Sale of the Equity Free and Clear of Liens, Claims, and Encumbrances* (ECF No. 69), which set an evidentiary hearing on ECF No. 56 on January 20, 2023 at 10:00 a.m.;

**WHEREAS**, also on November 17, 2022, the Court entered its *Order Setting Evidentiary Hearing and Establishing Related Deadlines* (ECF No. 70);

**WHEREAS**, on December 30, 2022, the Trustee filed a *Motion to Approve Modified Equity Purchase Agreement with Stalking Horse Bidder, Modify Sale Deadlines as Necessary, and Modify Publication Requirements for Sale* (ECF No. 85);

---

[1] Italics herein refer only to the title of the document referenced.

**WHEREAS**, an agreement has been reached between the Trustee and the Objecting Parties to resolve the Objection;

**NOW, THEREFORE**, in consideration of the foregoing and the respective covenants contained herein, mutual promises and covenants contained herein, the receipt and sufficiency of which are hereby mutually acknowledged, the Trustee and Objecting Parties agree as follows:

## AGREEMENT

1.      <u>Definitions</u>.

      a.      "<u>Case</u>" shall mean that certain chapter 7 bankruptcy case styled *In re Generex Biotechnology Corp*., Case No. 22-13166-PDR, and pending in the U.S. Bankruptcy Court for the Southern District of Florida;

      b.      "<u>Companies</u>" shall mean Antigen Express, Inc. d/b/a NuGenerex Immuno-Oncology, Inc. and Olaregen Therapeutix, Inc.;

      c.      "<u>Bankruptcy Court</u>" shall mean the U.S. Bankruptcy Court for the Southern District of Florida;

      d.      "<u>Debtor</u>" shall mean Generex Biotechnology Corp;

      e.      "<u>Effective Date</u>" shall mean the date upon which the Agreement is signed by the Parties;

      f.      "<u>Equity</u>" shall mean all shares, common or preferred, voting or non-voting, and rights and property interests of Antigen Express, Inc. d/b/a NuGenerex Immuno-Oncology, Inc. and Olaregen Therapeutix, Inc. that are owned by Debtor;

      g.      "<u>Estate</u>" shall mean bankruptcy estate of Generex Biotechnology Corp.;

      h.      "<u>Parties</u>" means the Trustee and the Objecting Parties collectively;

      i.      "<u>Party</u>" means either the Objecting Parties or the Trustee;

      j.      "<u>Person</u>" means an individual, a partnership (general or limited), a corporation, a limited liability company, an association, a joint stock company, Governmental Authority, a business or other trust, a joint venture, any other business entity or an unincorporated organization;

      k.      "<u>Sale Order</u>" means an Order of the Bankruptcy Court that authorizes the sale of the Equity to the Objecting Parties;

2.      <u>Purchase and Sale of Equity</u>.

      a.      <u>Acquisition of Equity and Claims</u>. Upon the terms and subject to the conditions contained in this Agreement, on the Closing Date (as hereinafter defined) the

the Trustee, shall sell, convey, transfer, deliver and assign to the Objecting Parties, and the Objecting Parties shall purchase and acquire from the Trustee: (1) all of the Estate's right, title and interest in and to the Equity on an "as-is, where-is" basis, with no warranties or representations, and (2) all right, title and interest of the Estate in any claims or causes of action against the Companies ("Claims").  The purchase and sale of the Equity and Claims is referred to in this Agreement as the "Acquisition."

      b.    <u>Purchase Price</u>. As consideration for the Acquisition, the total purchase price ("Purchase Price"), shall be One Million Five Hundred and Fifty Thousand Dollars ($1,550,000) to be paid in cash or immediately available funds as follows:

        i.    Objecting Parties shall pay Trustee One Hundred and Fifty Thousand Dollars ($150,000.00) on or before January 18, 2023 (the "Deposit") by check or by wire, pursuant to instructions provided by the Trustee.  The Deposit will be held in escrow by the Trustee and shall be released only as provided by this Agreement; and

        ii.    Objecting Parties shall pay Trustee the remaining amount of the Purchase Price no later than January 27, 2023.

      c.    <u>Higher and Better Offers</u>. Objecting Parties acknowledge and agree that this Agreement is subject to higher or better offers for the Equity and/or Claims which may be solicited by and/or received by the Trustee through an auction and sale procedures to be approved by the Bankruptcy Court.  If a higher or better bid for the Equity and/or Claims is accepted and approved by the Bankruptcy Court, and the Trustee successfully closes on such better or higher bid, Trustee shall refund the Deposit to the Objecting Parties within seven (7) calendar days of closing with a successful bidder other than Objecting Parties.

      d.    <u>Sufficient Funds</u>. No later than January 13, 2023, Objecting Parties shall provide to the Trustee such financial disclosures and documentation which demonstrate, in the Trustee's sole business judgment, the Objecting Parties' financial and other capabilities to fund the Purchase Price.

      e.    <u>Bankruptcy Court Approval</u>. The Trustee shall request that the Bankruptcy Court enter an Order in form and substance reasonably satisfactory to the Trustee and the Objecting Parties that approves this Agreement pursuant to Federal Rule of Bankruptcy Procedure 9019 ("Settlement Motion") and authorizes Trustee to perform its obligations under this Agreement to sell the Equity and Claims to Objecting Parties, subject to better or higher offers by competing bidders pursuant to modified bid procedures approved by the Bankruptcy Court.  The Parties acknowledge and agree that this Agreement is not binding and cannot be performed by or enforced against Trustee unless and until the Bankruptcy Court approves this Agreement and authorizes Trustee's performance of this Agreement.  In the event the Bankruptcy Court does not grant the Settlement Motion, this Agreement shall be null and void and of no force and effect against either of the Parties.

f.    The Closing. Unless otherwise agreed to in writing by the parties, the closing contemplated by this Agreement (the "Closing") shall take place within seven (7) days of the entry of a Sale Order that is not subject to any stay (the "Closing Date"). However, the Parties shall have the ability to extend Closing if mutually agreed in writing by both Parties.  The Closing Date shall not be before January 27, 2023.

3.    Releases. The Trustee and Objecting Parties shall exchange mutual general releases, in the form attached as **Exhibit A** hereto, conditioned upon the entry of an Order not subject to a stay or appeal approving this Agreement and either: (i) Trustee's actual receipt of the Purchase Price from Objecting Parties pursuant to paragraph 2(b) in the event the Objecting Parties are the highest and best offer for the Acquisition; or alternatively (ii) the Objecting Parties' waiver of the Objection, and any other objections by Objecting Parties, to the Equity Findings in the event a third party successful bidder solicits the Equity Findings as part of an accepted successful bid, or alternatively, (iii) the Objecting Parties' full compliance with paragraph 4(b)(i) and (ii)

4.    Default.

a.    It shall constitute an event of default under this Agreement by the Objecting Parties' if the Objecting Parties either: (i) fail to timely tender proof of sufficient funds to fund the Purchase Price pursuant to paragraph 2(d); (ii) fail to timely tender the Deposit pursuant to paragraph 2(b); or (iii) fail to timely fund the Purchase Price pursuant to paragraph 2(b) if they are the successful bidder for the Equity.  Either of these circumstances is referred to as an "Event of Default."

b.    Upon the occurrence of an Event of Default:

i.    The Objecting Parties expressly waive the Objection, and any and all other objections by the Objecting Parties, to the Equity Findings, and

ii.    The Objecting Parties will execute all documents reasonably necessary to effectuate the conveyance of all equity in the Companies that the Trustee or Objecting Parties claim to own to the Person identified by the Trustee as the successful bidder that is approved by the Bankruptcy Court.

5.    Reservation of Jurisdiction.  The Objecting Parties consent to the Bankruptcy Court reserving jurisdiction to fully adjudicate the Estate's ownership interest in the Companies if there is no Event of Default, that Objecting Parties are not the successful bidder, and the Objecting Parties do not consent to waive their objections to the Equity Findings.

6.    Attorneys' Fees and Costs. Each Party will pay its own costs and expenses, including attorneys' fees, incurred in connection with this Agreement.

7.    Counterparts. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original but all of which together will constitute one and the same instrument.

8.    <u>Entire Agreement</u>. This Agreement (including the documents referred to herein) constitutes the entire agreement among the Parties and supersedes any prior understandings, agreements, or representations by or among the parties, written or oral, to the extent they related in any way to the subject matter hereof.

9.    <u>Facsimile / Electronic Execution</u>. Signatures on counterparts of this Agreement transmitted by facsimile or by electronic means are hereby authorized and shall be acknowledged as if any such signature included on any such counterpart and so transmitted was an original execution.

10.    <u>Amendments and Waivers</u>. No amendment of any provision of this Agreement shall be valid unless the same shall be in writing and signed by the Parties. No waiver by any Party of any default, misrepresentation, or breach of warranty or covenant hereunder, whether intentional or not, shall be deemed to extend to any prior or subsequent default, misrepresentation, or breach of warranty or covenant hereunder or affect in any way any rights arising by virtue of any prior or subsequent such occurrence, unless a Party agreed to extend the deadline for a Party to act under the Agreement.

11.    <u>Construction</u>. The Parties have participated jointly in the negotiation and drafting of this Agreement. In the event an ambiguity or question of intent or interpretation arises, this Agreement shall be construed as if drafted jointly by the Parties and no presumption or burden of proof shall arise favoring or disfavoring any Party by virtue of the authorship of any of the provisions of this Agreement. Any reference to any federal, state, local, or foreign statute or law shall be deemed also to refer to all rules and regulations promulgated thereunder, unless the context requires otherwise. The word "including" shall mean including without limitation.

12.    <u>Governing Law and Jurisdiction</u>. This Agreement shall be governed by and construed in accordance with the domestic laws of the State of Florida without giving effect to any choice or conflict of law provision or rule (whether of the State of Florida or any other jurisdiction) that would cause the application of the laws of any jurisdiction other than the State of Florida. The Parties agree that any claim, dispute or controversy arising from or related to this Agreement shall be submitted to the Bankruptcy Court, which shall retain jurisdiction over same.

13.    <u>Headings</u>. The section headings contained in this Agreement are inserted for convenience only and shall not affect in any way the meaning or interpretation of this Agreement.

14.    <u>No Assignment</u>. Neither this Agreement nor any of the rights, interests or obligations under this Agreement shall be assigned by any party hereto without the prior written consent of the other parties.

15.    <u>Binding on Successors, Assigns and Others.</u> This Agreement and the covenants and conditions contained herein shall apply to, be binding upon, and inure to the heirs, executors, administrators, conservators, trustees, agents, legal representatives, successors, transferees, and assigns of the Parties hereto including, but not limited to, any subsequent committee, bankruptcy trustee, plan administrator, or liquidating trustee.

16.      <u>Advice of Counsel.</u> The Parties acknowledge that they have been (or have had the opportunity to be) represented by counsel of their own choice in the negotiations leading up to the execution of this Agreement and that they have read this Agreement and have had the opportunity to receive an explanation from legal counsel regarding the legal nature and effect of this Agreement, and each Party understands the terms and provisions of this Agreement and its nature and effect. Each Party further represents that they are entering into this Agreement freely and voluntarily, relying solely upon the advice of their own counsel if applicable, and not relying on representation of any other Party or of counsel for any other Party.

17.      <u>No Third-Party Beneficiaries</u>. This Agreement shall not confer any rights or remedies upon any Person other than the Parties and their respective successors and permitted assigns.

18.      <u>Severability</u>. Any term or provision of this Agreement that is invalid or unenforceable in any situation in any jurisdiction shall not affect the validity or enforceability of the remaining terms and provisions hereof or the validity or enforceability of the offending term or provision in any other situation or in any other jurisdiction.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

[SIGNATURES ON FOLLOWING PAGE]

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the Effective Date.

**OBJECTING PARTIES**

_Terry Thompson_
_____
Terry Thompson

_Anthony Crisci_
_____
Anthony Crisci

_____
Richard Purcell

_____
Dr. Jason Terrell


**TRUSTEE**


_____
Marc P. Barmat
Chapter 7 Trustee

**EXHIBIT A**

**MUTUAL GENERAL RELEASE**

Pursuant to the Settlement Agreement entered into by and between Marc Barmat, in his capacity as Chapter 7 Trustee ("Trustee") of Generex Biotechnology, Inc. ("Debtor") and the Debtor's Chapter 7 Bankruptcy Estate ("Estate") in Debtor's Chapter 7 Bankruptcy Case filed on April 23, 2022 under Case No. 22-13166-PDR in the U.S. Bankruptcy Court for the Southern District of Florida, Fort Lauderdale Division, on the one hand, and Terry Thompson, Richard Purcell, Dr. Jason Terrell, and Anthony Crisci (collectively, the "Objecting Parties"), on the other hand, (collectively, the Trustee and the Objecting Parties shall be referred to as the "Parties"), as approved by the U.S. Bankruptcy Court for the Southern District of Florida in Case No. 22-13166-PDR (the "Court"), as of the Effective Date of the Agreement,[2] and exclusive of the obligations, requirements, and duties expressly set forth in the Agreement,

(a) the Trustee, for himself, his agents, legal representatives, and attorneys, fully and unconditionally waive, release, remise, and forever discharge Objecting Parties, their agents, successors, predecessors, and assigns, from all known and unknown claims demands, causes of action, suits, debts, sums of money, accounts, covenants, bonds, obligations set forth in contracts, controversies, obligations set forth in agreements, promises, damages, expenses (including attorneys' fees and costs), whatsoever, both in law and in equity that he, the Estate, or the Debtor ever had, now has, or may have against the Objecting Parties by reason of any matter, cause or thing whatsoever, from the beginning of time to the date of the Effective Date of the Agreement arising out of or in any way relating to (i) the Debtor's bankruptcy case, (ii) the Estate, (iii) the Trustee's Bid Procedures Motion, (iv) the sale of the Equity by the Trustee, or (v) the Objection, including, without limitation, any avoidance claims on behalf of the Estate that may arise under Sections 547, 548 and 550 of the Bankruptcy Code and/or Chapter 726 of the Florida Statutes, any and all claims asserted against the Estate.

(b) the Objecting Parties, their agents, successors, predecessors, and assigns, fully and unconditionally waive, release, remise, and forever discharge the Trustee, his agents, legal representatives, and attorneys, and the Debtor's Estate, from all known and unknown claims demands, causes of action, suits, debts, sums of money, accounts, covenants, bonds, obligations set forth in contracts, controversies, obligations set forth in agreements, promises, damages, expenses (including attorneys' fees and costs), whatsoever, both in law and in equity that the Objecting Parties ever had, now has, or may have against the Trustee, his agents, legal representatives, and attorneys, or the Estate, by reason of any matter, cause or thing whatsoever, from the beginning of time to the date of the Effective Date of the Agreement arising out of or in any way relating to (i) the Debtor's bankruptcy case, (ii) the Estate, (iii) the Trustee's Bid Procedures Motion, (iv) the sale of the Equity by the Trustee, or (v) the Objection, including, without limitation, any avoidance claims on behalf of the Estate that may arise under Sections 547, 548 and 550 of the Bankruptcy Code and/or Chapter 726 of the Florida Statutes, any and all claims asserted against the Estate.

---

[2] All capitalized terms not defined herein shall have the meaning ascribed in the Settlement Agreement.

**OBJECTING PARTIES**

_____
Terry Thompson

_____
Anthony Crisci

_____
Richard Purcell

_____
Dr. Jason Terrell

**TRUSTEE**

_____
Marc P. Barmat
Chapter 7 Trustee

68056077;1