UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
(FORT LAUDERDALE DIVISION)
www.flsb.uscourts.gov

In re                                                          CASE NO. 22-13166-PDR
                                                               CHAPTER 7
GENEREX BIOTECHNOLOGY
CORP.,

        Debtor.

_____/

MARC P. BARMAT, Chapter 7 Trustee,                             ADV. NO .

        Plaintiff,

v.

MARK CORRAO, an individual,

        Defendant.

_____/

**ADVERSARY COMPLAINT TO AVOID AND RECOVER
AVOIDABLE TRANSFERS AND FOR OTHER RELIEF**

Plaintiff MARC P. BARMAT ("Plaintiff" or "Trustee"), Chapter 7 Trustee for the estates

of the above-captioned jointly administered debtors (collectively, the "Debtor" or "Generex"),

files this Adversary Complaint to Avoid and Recover Avoidable Transfers and for Other Relief,

against Defendant MARK CORRAO, ("Defendant"), and alleges:

**THE PARTIES, JURISDICTION, AND VENUE**

1.      On April 23, 2022 ("Petition Date"), an involuntary a Chapter 7 petition was filed

against Generex Biotechnology Corp. ("Generex" or the "Debtor") seeking relief under title 11 of

the United States Code (the "Bankruptcy Code").  By Order dated June 6, 2022, the Court entered

its order for relief (the "Order for Relief").

2.      Plaintiff is the duly appointed and acting Trustee of the bankruptcy estate (the

"Estate") of the Debtor with standing and authority to enforce, sue on, prosecute, settle, or compromise litigation claims that the Estate may hold against any person or entity, including against Defendant.

3.     Defendant is an individual who, at all times material hereto, was an officer and/or director of Generex owing the Company the fiduciary duties of care, loyalty and good faith under applicable Delaware and/or other state law.

4.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and Administrative Order 2012-25 of the United States District Court, Southern District of Florida.

5.     This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), (C), (E), (F), (H), and (O), and Plaintiff consents to the entry of final orders and judgment by the Bankruptcy Court in accordance with Fed. R. Bankr. P. 7008(a).

6.     Venue is proper in this district pursuant to 28 U.S.C. § 1409.

## FACTS SUPPORTING THE CLAIMS

7.     Generex was a U.S. based publicly traded Delaware corporation formed in 1997 operating as a development stage holding company out of its main business location in Miramar, Florida.

8.     As of the Petition Date, the direct and indirect non-debtor subsidiaries and affiliates included Generex's shares in, and/or investment values due from: NuGenerex Diagnostics (HDS), Antigen Express (NGIO), Veneto Holdings, L.L.C., Olaregen Therapeutix, Inc., Regentys Corporation, MediSource, Pantheon, Generex Pharmaceuticals (Canada), and Generex Bermuda, as well as bank accounts held by Generex, NuGenerex Distribution Solutions, LLC, NuGenerex Distribution Solutions 2, LLC, GNBTELC, LLC, Rapport Services, LLC, NuGenerex Immuno-Oncology, Inc., NuGenerex Diagnostics LLC, NuGenerex Surgical Holdings, LLC, Olaregen

Therapeutix, Inc., Regentys Corporation, NuGenHealth LLC, and NuGenerex Health, LLC.

9.      From 2017 until the entry of the Order for Relief, Joseph Moscato ("Moscato") served as CEO, President, and COB of Generex.  During his tenure, Moscato publicly claimed to have transformed Generex from a "typical developmental stage biotech" company into a healthcare and biotechnology network and holding company with "significant revenue potential."

10.     To achieve his purported business objectives, Moscato, along with the tacit or express approval of Defendant, caused the Company's operations to be primarily funded through debt and equity financings, all while experiencing inconsequential annual revenues coupled with multi-million dollars of annual losses.

11.     Following his appointment, the Trustee filed motions and obtained orders authorizing him to market and sell substantially all of the assets of Generex, which resulted in gross sale proceeds of at least $3.3 million, a mere fraction of the eight-figure asset valuations reported in the Company's SEC filings.

12.     By 2019, the Company was insolvent and otherwise unable to pay its debts as they matured or came due, with the financial statements prepared by management for fiscal years ending July 31, 2019 and 2020, containing materially inaccurate information including, *inter alia*, a material overstatement of goodwill and the failure to disclose material liabilities.

13.     Lacking good faith, Defendant breached his duties of care, loyalty, and/or good faith owed to Generex by, *inter alia*: (i) failing to oppose or put a stop to Moscato's deceptive business practices that caused the Debtor to incur unsustainable legal and financial obligations and enter into highly questionable acquisitions, dealings, and transactions; (ii) causing, acquiescing in, or otherwise allowing the Debtor to enter into highly questionable acquisitions, dealings, and transactions that were consummated, accounted for, and disclosed to the public with the bad faith

3

purpose to artificially inflate the value of the Company's stock in furtherance of Moscato's ill-conceived and fatally flawed "acquisition" strategy; (iii) failing to ensure that adequate systems, safeguards, and controls were in place to fully and properly monitor, supervise, or oversee the Company's business, operational, accounting, regulatory, and financial reporting functions; and (iv) failing to cause or otherwise require the filing of a voluntary bankruptcy petition or comparable state law insolvency proceeding during 2019 or 2020, at the latest.

14. Had Defendant fully and properly discharged his fiduciary duties, shareholders and creditors would have ceased funding or financing the Company's operations, thereby preventing additional debt to be incurred and assets depleted as evidenced, in part, by the $84,341,453.60 of claims filed against the Estate as reflected in the relevant portion of official claims register maintained by the Clerk of the Court duplicated below:

**Case Name:** Generex Biotechnology Corp
**Case Number:** 22-13166-PDR
**Chapter:** 7
**Date Filed:** 04/23/2022
**Total Number Of Claims:** 21

| Total Amount Claimed* | $84341453.60 |
| Total Amount Allowed* | |

*Includes general unsecured claims

15. Defendant received the following compensation, payments, and/or other transfers from Generex prior to the Petition Date and/or the entry of the Order for Relief:

[INTENTIONALLY LEFT BLANK –
FIGURE APPEARS ON NEXT PAGE]

4

**GENEREX BIOTECHNOLOGY CORP.**
**CASE NO. 22-13166-BKC-PDR**
**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

**Transfers to Mark Corrao**
**For the Period From April 23, 2018 to April 22, 2022**

Source: Generex QuickBooks

| QB Account | Date | Payee | Disbursements |
|---|---|---|---|
| Checking Account RBC 7647 | 06/12/18 | Mark Corrao | $ 10,000.00 |
| Checking Account RBC 7647 | 09/13/18 | Mark Corrao | 5,000.00 |
| Checking Account RBC 7647 | 11/02/18 | Mark Corrao | 10,000.00 |
| Checking Account RBC 7647 | 03/07/19 | Mark Corrao | 7,500.00 |
| Checking Account RBC 7647 | 12/16/19 | Mark Corrao | 10,000.00 |
| Checking Account RBC 7647 | 08/10/20 | Mark Corrao | 10,000.00 |
| Checking Account RBC 7647 | 02/01/21 | Mark Corrao | 10,000.00 |
| Checking Account RBC 7647 | 03/02/21 | Mark Corrao | 5,000.00 |
| Checking Account RBC 7647 | 05/10/21 | Mark Corrao | 25,000.00 |
| Checking Account RBC 7647 | 07/16/21 | Mark Corrao | 20,020.00 |
| **Total Disbursements** | | | **$ 112,520.00** |

(collectively, the "Payment Transfers").

16.     All conditions precedent to the filing of this action have been waived, satisfied, excused, performed, or have occurred.

**COUNT I**
**ACTION TO AVOID AND RECOVER AVOIDABLE TRANSFERS UNDER**
**BANKRUPTCY CODE SECTIONS 544 AND 548 AND APPLICABLE STATE LAW**

Plaintiff sues Defendant and alleges:

17.     Plaintiff realleges paragraphs 1-16 above.

18.     This is an action against Defendant seeking to avoid and recover avoidable transfers under Bankruptcy Code Sections 544 and 548 and applicable state law.

19.     Pursuant to 11 U.S.C. §§ 544 and 548 and applicable Florida law including Fla. Stat. § 726.105(1)(b) and/or other state law or other applicable avoidance law, a trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that

was made or incurred on or within 2 years (under Section 548 of the Bankruptcy Code) and 4 years (under applicable Florida and/or other state law) before the date of the filing of the petition, if the debtor voluntarily or involuntarily – (A) made such transfer or incurred such obligation with actual intent to hinder or delay, any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or (B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and (ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation; (II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; or (III) intended to incur, or believed that the debtor would incur, debts that would be beyond the Debtor's ability to pay as such debts matured.

20.     Pursuant to 11 U.S.C. § 550, in an avoidance action commenced under Sections 544 and 548 of the Bankruptcy Code and applicable Florida and/or other state law, the trustee may recover, for the benefit of the Estate, the property transferred, or, if the court so orders, the value of such property, from – (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; and (2) any immediate or mediate transferee of such initial transferee.

21.     Prior to the Petition Date and/or the Order for Relief, Defendant provided services to or for the Debtor, and received the Payment Transfers from the Debtor in regard to or on account of such services.

22.     The Debtor did not receive reasonably equivalent value for the Payment Transfers and it: (i) was insolvent at the time of the Payment Transfers; or (ii) intended to incur, or believed or reasonably should have believed, that it would incur debts beyond its ability to pay as they came due or matured.

23.     Alternatively, the Payment Transfers were made by the Debtor with actual intent to hinder or delay creditors of the Debtor, and are otherwise avoidable pursuant to Section 548 and applicable Florida law including Fla. Stat. § 726.105(1)(a), and/or other state law. Among other badges evidencing actual intent, the Payment Transfers were made: (i) to an insider, (ii) while the Debtor was balance sheet and/or equitably insolvent, and (iii) without any reasonably equivalent value being received by the Debtor based upon, *inter alia*, Defendant's alleged breaches of fiduciary duty as alleged in Paragraphs 1-14 above.

24.     Plaintiff can avoid the Payment Transfers pursuant to Sections 544 and 548 of the Bankruptcy Code and applicable Florida and/or other state law, and recover the value thereof for the benefit of the Estate pursuant to Section 550 of the Bankruptcy Code.

WHEREFORE, Plaintiff demands the entry of judgment against Defendant: (i) avoiding the Payment Transfers; (ii) awarding a money judgment to Plaintiff in an amount equal to the amount of the Payment Transfers pursuant to 11 U.S.C. § 550(a); (iii) awarding pre-judgment interest; (iv) disallowing any claim that Defendant may have against the Debtor's Estate until such time as Defendant pays the Payment Transfers asserted herein as provided in 11 U.S.C. § 502(d); and (v) awarding any other relief the Court deems appropriate.

**COUNT II**
**ACTION TO AVOID AND RECOVER AVOIDABLE**
**TRANSFERS UNDER BANKRUPTCY CODE SECTION 547**

Plaintiff sues Defendant and alleges:

25.     Plaintiff realleges Paragraphs 1-16 above.

26.     During the one year insider preference period under Section 547 of the Bankruptcy Code, the Debtor made, or caused to be made, transfers of an interest of the Debtor in property to, or for the benefit of Defendant, which transfers are reflected in Paragraph 15 above (the

"Preference Payments" or, if singular, "Preference Payment").

27. Defendant, an insider of the Company as that term is defined under Section 101(31) of the Bankruptcy Code, was a creditor of the Debtor at the time of each Preference Payment by virtue of supplying services for which the Debtor was obligated to pay.

28. The Debtor made, or caused to be made, the Preference Payments for, or on account of, antecedent debt owed by the Debtor to Defendant before such payments were made.

29. At the time of each Preference Payment, the Debtor was insolvent.

30. Plaintiff is entitled to the presumption of insolvency for each transfer pursuant to Section 547(f) of the Bankruptcy Code.

31. The Preference Payments enabled Defendant to receive more than he would have received if: (a) the Debtor's bankruptcy case was administered under chapter 7 of the Bankruptcy Code; (b) the Preference Payments had not been made; and (c) Defendant received payment of such debt to the extent provided by the provisions of the Bankruptcy Code.

32. At no time material hereto did Defendant maintain a lien on the Debtor's assets or otherwise hold a secured interest.

33. The Preference Payments diminished the value of the Debtor's Estate.

34. Defendant was the initial transferee of the Preference Payments, and/or the entity for whose benefit the Preference Payments were made.

35. Each of the Preference Payments are avoidable and the Debtor is entitled to an order and judgment against Defendant avoiding each Preference Payment under 11 U.S.C. §547(b).

WHEREFORE, in accordance with 11 U.S.C. §§ 547, Plaintiff demands judgment against Defendant as follows: (i) determining that the Preference Payments are avoidable; (ii) entering judgment against Defendant for the value of the Preference Payments, plus interest and costs of

suit; (iii) entering judgment against Defendant avoiding the Preference Payments; (iv) disallowing any claim Defendant may have against the Debtor's Estate unless and until such time as the amounts asserted hereunder are paid as provided in 11 U.S.C. § 502(d), subject to other objections thereto; and (v) for any other relief the Court deems appropriate.

**COUNT III**
**TURNOVER OF DOCUMENTS AND RECORDS OF AND**
**RELATING TO THE DEBTOR PURSUANT TO 11 U.S.C. § 542**

Plaintiff sues Defendant and alleges:

36.     Plaintiff realleges paragraphs 1-16 above.

37.     This is an action for turnover of property of and financial documents and recorded information relating to the Debtor and the Estate pursuant to Section 542 of the Bankruptcy Code.

38.     Prior to the Petition Date, Defendant was an officer and/or director of the Debtor. In connection therewith, Defendant should have within his possession, custody, or control certain documents and records of or relating to the Debtor, and/or documents and records created for the benefit of or at the direction of Debtor (collectively the "Documents").

39.     The Documents constitute property of the Debtor's Estate pursuant to Section 541 of the Bankruptcy Code, and/or recorded information relating to the Debtor's property or financial affairs, and therefore may be recovered by Plaintiff pursuant to Section 542 of the Bankruptcy Code.

40.     Plaintiff is entitled to the entry of an order compelling turnover from Defendant of the Documents.

WHEREFORE, Plaintiff demands judgment against Defendant ordering turnover of the Documents and for any other relief the Court deems appropriate.

## COUNT IV
## OBJECTION TO CLAIMS

Plaintiff sues Defendant and alleges:

41.    Plaintiff realleges paragraphs 1-16 above.

42.    This is an action objecting to claims asserted or to be asserted by Defendant against the Estate (collectively, the "Claims").

43.    Plaintiff objects to the allowance and payment of the Claims pursuant to Section 502(b)(1) of the Bankruptcy Code because such Claims are barred in whole or in part by the doctrines of setoff and recoupment in light of the acts and omissions of Defendant described herein.

WHEREFORE, the Trustee demands judgment against Defendant: (i) disallowing the Claims in whole or in part; and (ii) for any other relief the Court deems appropriate.

## COUNT V
## EQUITABLE SUBORDINATION OF CLAIMS

Plaintiff sues Defendant and alleges:

44.    Plaintiff realleges paragraphs 1-16 and 42-43 above.

45.    This is an action seeking to equitably subordinate the Claims of Defendant.

46.    To the extent all or any portion of the Claims are allowed, this is an action to equitably subordinate such Claims and any other claim Defendant may attempt to assert against the Estate.

47.    Based upon the acts and omissions by Defendant described herein, all claims by Defendant should be subordinated to the claims of other creditors pursuant to principles of equitable subordination and Section 510(c) of the Bankruptcy Code.

WHEREFORE, the Trustee demands judgment against Defendant: (i) equitably subordinating the Claims and any other claim Defendant may attempt to assert against the Estate

10

to the claims of all other creditors in this case; and (ii) for any other relief the Court deems appropriate.

Dated this 7th day of May, 2024.

CIMO MAZER MARK PLLC
*Special Litigation Counsel*
*for the Chapter 7 Trustee*
255 Alhambra Circle, Suite 1160
Coral Gables, FL 33134
Tel: (305) 374-6480
Fax: (305) 374-6488

By: /s/ David C. Cimo
    David C. Cimo, Esq.
    Fla. Bar No. 775400
    Email: dcimo@cmmlawgroup.com
    Marilee A. Mark, Esq.
    Fla. Bar No. 725961
    Email: mmark@cmmlawgroup.com

11