**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

In re:                                                                    Case No.: 22-bk-13166-PDR

GENEREX BIOTECHNOLOGY CORP.,                          Chapter 7

     Debtor.

                                          /

<u>**OMNIBUS MOTION TO APPROVE COMPROMISE OF CONTROVERSY**</u>

---

**NOTICE OF OPPORTUNITY TO**
**OBJECT AND REQUEST FOR HEARING**

**Any interested party who fails to file and serve a written response to this motion within twenty-one (21) days after the date of service stated in this motion shall, pursuant to Local Rule 9013-1(D), be deemed to have consented to the entry of an order granting the relief requested in the motion.**

**If you object to the relief requested in this paper, you must file a response with the Clerk of the Court at United States Courthouse, 299 East Broward Blvd., Room 112, Fort Lauderdale, FL 33301, and serve a copy on the movant's attorney, Eyal Berger, 201 East Las Olas Boulevard Suite 1800, Fort Lauderdale, FL 33301 and any other appropriate persons within the time allowed. If you file and serve a response within the time permitted, the Court will either schedule and notify you of a hearing or consider the response and grant or deny the relief requested without a hearing.**

**If you do not file a response within the time permitted, the Court will consider that you do not oppose the relief requested in the paper, will proceed to consider the paper without further notice or hearing, and may grant the relief requested.**

---

Marc P. Barmat, solely as Chapter 7 Trustee for the estate of the Generex Biotechnology Corp ("Debtor") and not individually (the "<u>Trustee</u>"), moves the Court to approve the Settlement Agreements annexed as **Exhibits 1, Exhibit 2, Exhibit 3 and Exhibit 4** (the "Settlement Agreements") hereto between the Trustee, on the one hand, and (1) Arizona Endocrinology Center PLC, (2) Mark Corrao, (3) NSABP Foundation, Inc.,and (4) Shore Research and Development ("Transferees") on the other hand.  The Settlement Agreements resolve certain claims that the

1

Trustee asserted against the Transferees for the total sum of $94,000.00 payment to the Trustee, with Arizona Endocrinology Center PLC to pay $15,000; Mark Corrao to pay $35,000; NSABP to pay $35,000, and; Shore Research & Development, LLC to pay $9,000.  The Settlement Agreements also provide mutual releases to the Trustee and Transferees.  In support thereof, the Trustee states as follows:

## I.      Facts Supporting Requested Relief

1.      On April 23, 2022 (the "Petition Date"), an involuntary petition was filed against the debtor, Debtor in the United States Bankruptcy Court for the Southern District of Florida.

2.      Mark P. Barmat was appointed the Chapter 7 Trustee on June 07, 2022.

3.      Prior to the Petition Date, the Debtor and the Transferees had a business relationship.

4.      The Trustee commenced adversary proceedings against Mark Corrao on May 7, 2024 under Adv. Pro. 24-01271-PDR;  against Arizona Endocrinology Center PLC and Shore Research & Development, LLC under Adv. Pro. 24-01296 and 24-01306, respectively, and; against NSABP Foundation, Inc on June 3, 2024 under Adv. Pro. 24-01311 (the "Litigations").

5.      Prior to Transferees' response deadline, counsel for the Trustee and counsel for the Transferees entered into arms' length negotiations.  As a result of those negotiations, the parties reached Settlement Agreements.

6.      The significant provisions of the Settlement Agreements include the following:

      a.      Settlement Payment. Within fourteen (14) business days from an Order of the Bankruptcy Court approving these Agreements becoming final and non-appealable (the "Approval Order"), and subject to entry of the Approval Order, the individual Transferees shall deliver to the Trustee the following sums (the "Settlement Amounts"), in full satisfaction of the claims related to the Transfers:

            i. Arizona Endocrinology Center PLC to deliver to the Trustee the sum of **$15,000.00**;

2

    ii.   Mark Corrao to deliver to the Trustee the sum of **$35,000.00;**

    iii.   NSABP Foundation, Inc to deliver to the Trustee the sum of **$35,000.00**;

    iv.   Shore Research & Development, LLC to deliver to the Trustee the sum of **$9,000**.

    b.   <u>Release of Claims</u>. The parties will issue mutual releases to each other for all claims in connection with the Litigation, excluding the duties and obligations set forth in this agreement.  This includes, but is not limited to, the Trustee's claims against Transferees related to the pre-Petition business relationship between the Debtor and the Transferees, and the Transferees' right to file a claim pursuant to 11 U.S.C. § 502(h) arising as a consequence of the Transfereess payment of the Settlement Amount.

7.    The foregoing terms are only a summary of the key terms of the Settlement Agreements.  The terms of the Settlement Agreements control and all interested parties are urged to review same.

## II.    Legal Standard for Settlement

8.    The Settlement Agreements are entered into through the authority granted to Trustee by the Order for Relief (ECF 17). Court approval is being sought as per the terms of the Settlement Agreements.

9.    The Settlement Agreements were negotiated at arms' length and approval is in accord with the strong public policy which favors pre-trial settlement in all types of litigation. *In re Grau*, 267 B.R. 896, 899 (Bankr. S.D. Fla. 2001).

10.    Bankruptcy Rule 9019(a) provides: "On motion . . . and after a hearing on notice to creditors, the debtor . . . and to such other entities as the court may designate, the court may approve a compromise or settlement."

11.    As this Court has previously found, "approval of a settlement in a bankruptcy proceeding is within the sound discretion of the Court, and will not be disturbed or modified on appeal unless approval or disapproval is an abuse of discretion." *In re Arrow Air, Inc*., 85 B.R.

78154010;1

886, 891 (Bankr. S.D. Fla. 1988) (citing *Rivercity v. Herpel* (*In re Jackson Brewing Co.*), 624 F.2d 599, 602-03 (5th Cir. 1980); *Anaconda-Ericsson, Inc. v. Hessen* (*In re Teltronics Servs., Inc.*), 762 F.2d 185, 189 (2d Cir. 1985) (hereinafter, "*Teltronics*"); *In re Prudence Co.*, 98 F.2d 559 (2d Cir. 1938), *cert. denied sub nom. Stein v. McGrath*, 306 U.S. 636 (1939)).

12.    The test is whether the proposed settlement "falls below the 'lowest point in the range of reasonableness.'" *In re Arrow Air, Inc.*, 85 B.R. at 891 (quoting *Teltronics*, 762 F.2d at 189; *Cosoff v. Rodman* (*In re W.T. Grant Co.*), 699 F.2d 599, 608 (2d Cir. 1983), *cert. denied*, 464 U.S. 822 (1983)).

13.    Under Eleventh Circuit precedent, when a bankruptcy court decides whether to approve or disapprove a proposed settlement, it must consider:

      a.    the probability of success in the litigation;

      b.    the difficulties, if any, to be encountered in the matter of collection;

      c.    the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and

      d.    the paramount interest of the creditors and a proper deference to their reasonable views in the premises. *Wallis v. Justice Oaks II, Ltd. (In re Justice Oaks II. Ltd.),* 898 F.2d 1544, 1549 (11th Cir. 1990) (citing sources omitted).

14.    In exercising its review under Bankruptcy Rule 9019, a bankruptcy court gives weight to a Trustee's sound business judgment. *See, e.g., In re Southeast Banking Corp.*, 314 B.R. 250, 273 (Bankr. S.D. Fla. 2004) (noting a court gives "weight to the trustee's informed judgment" in considering a settlement under Bankruptcy Rule 9019); *Abeles v. Infotechnology, Inc. (In re Infotechnology, Inc.)*, 89 F.3d 825 (2d Cir. 1995) (noting that in determining whether to approve

78154010;1

a debtor's motion to settle a controversy, a court does not substitute its judgment for that of the debtor in possession).

15.    In the instant case, each of the four *Justice Oaks* factors weighs heavily in favor of approval of the Settlement Agreements.

### A.    *Probability of Success*

16.    Transferees have not yet filed an answer and the parties have not begun substantively litigating the Trustee's claims against the Transferees.  The Settlement Agreements represent the most cost-effective resolution to this adversary proceedings given the compounding costs of litigation, which may include discovery, an evidentiary hearing and appeal. Continuing with the Litigations will be more costly than settling as proposed herein.  The Transferees have provided informal discovery to the Trustee that raises numerous fact based defenses to the Trustee's claims as to the value of services provided to the Debtor in exchange for the Transfers at issue.  Although the Trustee asserts that the Trustee may still prevail on avoiding and recovering some portion of the Transfers, there exists a potential for an adverse ruling negating some or all of the Trustee's claims in the instant case.

### B.    *Difficulties of Collection*

17.    The *Justice Oaks* factor concerning difficulty of collection also weighs in favor of the Settlement Agreements.

18.    Specifically, NSABP is a non-profit charity with limited assets available to satisfy any money judgment.  This will make it difficult for the Trustee to collect on any judgment against NSABP, making settlement more prudent.

19.    Regarding the other Transferees, even if the Trustee were to forego settlement and pursue the Transferees for claims against them, the collectability of any judgment against the

5

78154010;1

Transferees is uncertain as the Transferees are located in other venues and the Transferees can take steps to increase the cost of collection, such as bankruptcy, making a voluntary settlement the best possible option.

### C.      *Complexity, Expense, Inconvenience and Delay*

20.      Notwithstanding that the issues in regards to Trustee's claims against the Transferees are not particularly complex, the costs associated with litigation, which may include discovery, an evidentiary hearing and the possible appeal will be substantial and would necessarily result in a significant delay to the administration of this estate.  Accordingly, this factor supports approval of the Settlement.

### D.      *Paramount Interests of Creditors*

21.      The Settlement Agreements provide the estate with an opportunity to efficiently settle the claims among the parties, bringing finality to a dispute for a relatively small cost to the estate, while stemming the bleed from continuing the Litigation, which continuation will surely cost more to the estate than the settlement proposed herein. As such, the Settlement Agreements serves the paramount interest of creditors and this factor supports approval of the Settlement.

## III.    Notice

22.      The Trustee will serve this Motion on all appropriate parties and will file a separate certificate of service identifying the specific parties served with this Motion and the Notice of Hearing when issued.  The Trustee requests that the Court make a determination that all necessary parties have received the requisite notice.

23.      Assuming that the Settlement Agreements are approved, the Trustee seeks authority to: (a) take such actions; and (b) execute such documents, as it deems reasonable, necessary and/or

6

78154010;1

desirable to effectuate the Settlement Agreements, including execution of the mutual release, after receipt of the Settlement Payment.

24. Finally, assuming that the Settlement Agreements are approved, the Trustee requests that the Court retain personal and subject matter jurisdiction to: (a) interpret, implement and enforce (i) the terms and conditions of the Settlement Agreements, the Motion and the Order approving, and (ii) all related matters; and (b) adjudicate any and all disputes of any type arising from or related to (i) the Settlement Agreements, this Motion and the Order approving, and (ii) all related matters.

## IV. Request for Approval and Authorization of Payment of Earned 35% Contingency Fee To Trustee's Court-Approved Special Litigation in Regards to the Settlement Agreement with Mark Corrao

24. Section IV of this motion applies solely to the settlement agreement between the Trustee and Mark Corrao.

25. By Order dated February 17, 2023 [ECF. No. 140] (the "Retention Order"), the Bankruptcy Court approved the retention of David C. Cimo, Esq. ("Cimo"), Marilee A. Mark, Esq. ("Mark"), and the law firm of Cimo Mazer Mark PLLC (collectively, "CMM") as Special Litigation Counsel for the Trustee to perform the services set forth in the Retention Application [ECF No. 113] (the "Retention Application") under the terms and conditions set forth therein. [Retention Order at ¶¶ 7,8].

26. The Retention Application provides that CMM shall, on a 35% contingency fee basis (the "Contingency Fee"), investigate, and if appropriate, prosecute: (a) claims against former insiders, officers, directors, managers, owners, shareholders, members, partners, employees, or control persons of the Debtors, (and each of their respective affiliates, agents, owners, and/or control persons); (b) claims against former professionals of the Debtors, including auditors,

78154010;1

accountants, bookkeepers, attorneys, financial brokers, and investment advisors; (c) claims against former banks and other financial institutions of the Debtors; (d) Chapter 5 avoidance claims, and claim objections, involving the claims described in (a)-(c) above; (e) insurance recovery claims, including coverage litigation and bad faith claims involving the claims described in (a)-(c) above; and (f) any and all other litigation claims as may be directed by the Trustee and agreed to by the Applicant (collectively, the "Litigation Claims"). [Retention Application at ¶ 8].

27.     The Retention Application further provides that all requests for payment of CMM's Contingency Fee pursuant to the Order approving the Application shall be filed and approved without the need to file formal fee applications with the Court: (i) by respective motion to approve any and all settlements pursuant to Fed. R. Bank. P. 9019, with the amount of the Contingency Fee sought to be included in both the title and body of the motion; and/or (ii) in a motion seeking payment of the Contingency Fee in the event of payment other than from settlement, i.e., satisfaction of a judgment. [Retention Application at ¶ 18].

28.     The Retention Order provides, in pertinent part, that the Trustee is authorized to pay the Contingency Fee to CMM without further Order of the Court upon entry of an Order approving any and all settlements pursuant to Bankruptcy Rule 9019, with the amount of the Contingency Fee sought to be included in both the title and body of the 9019 motion. [Retention Order at ¶ 4].

29.     Accordingly, if the Settlement referenced herein is approved, the Trustee requests authorization and approval to pay the earned 35% Contingency Fee in the amount of **$ 12,250.00** to CMM, from the $35,000.00 Settlement Payment, in accordance with the terms of the Retention Order, without further Order of the Court.

78154010;1

30.     In accordance with the Retention Order, CMM shall file applications seeking reimbursement of costs and expenses. [Retention Order at ¶ 5].

**WHEREFORE**, the Trustee requests the Court enter an Order: (i) after 21 days' notice to creditors, approving the Settlement Agreements, (ii) finding that the notice provided to interested parties of the hearings for approval is sufficient under the circumstances, and (iii) for all other relief that is just and proper.  Trustee also requests the Court approve and authorize the payment of a 35% contingency to attorney David Cimo, Esq in the amount of $12,250.00, solely in relation to the settlement agreement between Trustee and Mark Corrao.  A draft of the proposed order is attached hereto as **Exhibit 5**.

Dated: October 2, 2024

Respectfully submitted,

By:     */s/ Eyal Berger*
Eyal Berger, Esq.
Florida Bar No.: 011069
Email: eyal.berger@akerman.com
**AKERMAN LLP**
201 East Las Olas Boulevard, Suite 1800
Fort Lauderdale, FL 33301-2999
Tel: 954-463-2700
Fax: 954-463-2224

*Counsel for the Trustee, Marc P. Barmat*

9

78154010;1

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on October 2, 2024, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day by transmission of Notices of Electronic Filing generated by CM/ECF to those parties registered to receive electronic notices of filing in this case as listed in the attached service list.

By: /s/ *Eyal Berger*
Eyal Berger, Esq.

78154010;1

## SERVICE LIST

**22-13166-PDR Notice will be electronically mailed to:**

Marc P Barmat
barmat.trustee@furrcohen.com,
mpb@trustesolutions.net

Eyal Berger, Esq. on behalf of Plaintiff Marc Barmat, Trustee
eyal.berger@akerman.com,
jeanette.martinezgoldberg@akerman.com

Eyal Berger, Esq. on behalf of Plaintiff Marc P. Barmat
eyal.berger@akerman.com,
jeanette.martinezgoldberg@akerman.com

Eyal Berger, Esq. on behalf of Plaintiff Marc P. Barmat, Trustee
eyal.berger@akerman.com,
jeanette.martinezgoldberg@akerman.com

Eyal Berger, Esq. on behalf of Trustee Marc P Barmat
eyal.berger@akerman.com,
jeanette.martinezgoldberg@akerman.com

Scott N Brown, Esq on behalf of Defendant Russo Partners LLC
sbrown@bastamron.com,
jarrechavala@bastamron.com;jmiranda@bastamron.com;kszolis@bastamron.com

David C. Cimo, Esq on behalf of Plaintiff Marc P Barmat
dcimo@cmmlawgroup.com,
mmark@cmmlawgroup.com;ekelly@cmmlawgroup.com;ekelly@ecf.courtdrive.com

David C. Cimo, Esq on behalf of Plaintiff Marc P. Barmat
dcimo@cmmlawgroup.com,
mmark@cmmlawgroup.com;ekelly@cmmlawgroup.com;ekelly@ecf.courtdrive.com

David C. Cimo, Esq on behalf of Plaintiff Marc P. Barmat, Trustee
dcimo@cmmlawgroup.com,
mmark@cmmlawgroup.com;ekelly@cmmlawgroup.com;ekelly@ecf.courtdrive.com

David C. Cimo, Esq on behalf of Special Counsel David C Cimo

dcimo@cmmlawgroup.com,
mmark@cmmlawgroup.com;ekelly@cmmlawgroup.com;ekelly@ecf.courtdrive.com

David C. Cimo, Esq on behalf of Trustee Marc P Barmat
dcimo@cmmlawgroup.com,
mmark@cmmlawgroup.com;ekelly@cmmlawgroup.com;ekelly@ecf.courtdrive.com

Ross R Hartog on behalf of Creditor Beijing Youfeng International Consulting Co., Ltd.
rhartog@mrthlaw.com,
ecfnotices@mrthlaw.com,gruiz@mrthlaw.com,msalazar@mrthlaw.com,mrthbkc@gmail.com,lgener@mrthlaw.com,ycandia@mrthlaw.com,rhartog@ecf.courtdrive.com

Ross R Hartog on behalf of Interested Party Beijing Youfeng Biological Technology, Ltd
rhartog@mrthlaw.com,
ecfnotices@mrthlaw.com,gruiz@mrthlaw.com,msalazar@mrthlaw.com,mrthbkc@gmail.com,lgener@mrthlaw.com,ycandia@mrthlaw.com,rhartog@ecf.courtdrive.com

Catherine W. Higgins on behalf of Defendant MNP LLP
chiggins@goldbergsegalla.com

Catherine W. Higgins on behalf of Interested Party MNP LLP
chiggins@goldbergsegalla.com

Mark D. Hildreth, Esq on behalf of Creditor AVEM Medical, L.L.C., f/k/a MediSource Partners, LLC
mhildreth@shumaker.com, shorne@shumaker.com

Mark D. Hildreth, Esq on behalf of Creditor Pantheon Medical - Foot & Ankle, LLC
mhildreth@shumaker.com, shorne@shumaker.com

Mark D. Hildreth, Esq on behalf of Creditor Travis Bird
mhildreth@shumaker.com, shorne@shumaker.com

Brandon T Holmes on behalf of Defendant EPIVAX, INC.
brandon.holmes@dinsmore.com,
Alexandria.Bishop@Dinsmore.com;Frances.Gonzalez@Dinsmore.com

Zachary P Hyman on behalf of Petitioning Creditor

11

Three Brothers Trading, LLC d/b/a Alternative
Execution Group
zach@millenniallaw.com,
jessica@millenniallaw.com;assistant@millenniallaw.
com;millenniallawforms@gmail.com;4619041420@f
ilings.docketbird.com

Amanda Klopp on behalf of Plaintiff Marc Barmat,
Trustee
amanda.klopp@akerman.com,
jeanette.martinezgoldberg@akerman.com

Amanda Klopp on behalf of Plaintiff Marc P. Barmat
amanda.klopp@akerman.com,
jeanette.martinezgoldberg@akerman.com

Amanda Klopp on behalf of Plaintiff Marc P.
Barmat, Trustee
amanda.klopp@akerman.com,
jeanette.martinezgoldberg@akerman.com

Amanda Klopp on behalf of Trustee Marc P Barmat
amanda.klopp@akerman.com,
jeanette.martinezgoldberg@akerman.com

Andrew V Layden on behalf of Interested Party Bio
& Med Tech Fund of the Future SPV2 LP
alayden@bakerlaw.com,
orlbankruptcy@bakerlaw.com;cmartin@bakerlaw.co
m

Michael D Lessne on behalf of Creditor Andrew Ro
michael@lessne.law

Michael D Lessne on behalf of Interested Party Bio
& Med Tech Fund of the Future SPV2 LP
michael@lessne.law

Marilee A Mark on behalf of Attorney Marilee A.
Mark
mmark@cmmlawgroup.com,
ekelly@cmmlawgroup.com;mmark@ecf.courtdrive.c
om

Barry E. Mukamal
bemtrustee@kapilamukamal.com

Office of the US Trustee
USTPRegion21.MM.ECF@usdoj.gov

Jon Polenberg, Esq. on behalf of Defendant Mark
Prioletti
jpolenberg@beckerlawyers.com,
tfritz@beckerlawyers.com;ydaneshfar@beckerlawyer
s.com;CourtMail@beckerlawyers.com

Robert F. Reynolds on behalf of Defendant SNK
UNLIMITED INC.
rreynolds@robertreynoldspa.com

Zach B Shelomith on behalf of Defendant Oasis
Capital, LLC
zbs@lss.law,
info@lss.law;mch@lss.law;zshelomith@ecf.inforupt
cy.com

S. Jonathan Vine on behalf of Interested Party Brian
S Bernstein
jonathan.vine@csklegal.com,
leslie.vargo@csklegal.com

Thomas G Zeichman on behalf of Defendant HMBL
Consulting LLC
tzeichman@bmulaw.com,
g67999@notify.cincompass.com;zeichman.thomasb
@notify.bestcase.com

Jonathan S Ziss on behalf of Defendant MNP LLP
jziss@goldbergsegalla.com

12

78154010;1

Exhibit 1

## SETTLEMENT AGREEMENT

**THIS SETTLEMENT AGREEMENT** (the "Agreement") is made as of September 12, 2024, and entered into by and between Marc P. Barmat, solely as Chapter 7 Trustee for the estate of the Debtor and not individually (the "Trustee") and Arizona Endocrinology Center PLC ( the "Transferee"). The parties to this Agreement are collectively referred to as the "Parties" or singularly as a "Party."

## RECITALS

A.    On April 23, 2022 (the "Petition Date"), an involuntary petition was filed against the debtor, Generex Biotechnology Corp. (the "Debtor") in the United States Bankruptcy Court for the Southern District of Florida (the "Bankruptcy Court") for relief under Chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code"), which commenced Case No. 22-13166-PDR (the "Bankruptcy Case" or the "Main Case").

B.    On June 6, 2022, the Bankruptcy Court entered an order for relief.

C.    Plaintiff is the duly appointed and authorized Chapter 7 trustee of Debtor's estate.

D.    Prior to the Petition Date, the Debtor and the Transferee had a business relationship.

E.    The Trustee alleges transfers in the approximate amount of $36,797.77 made by the Debtor to the Transferee that the Trustee alleges are avoidable and recoverable under 11 U.S.C. §§ 502, 544 550 and Fla. Stat. §§ 726.105(1)(b), 726.106(1) (the "Complaint"). The transfers are referred to collectively as the "Transfers." The Trustee filed an adversary proceeding on June 2, 2024 against the Transferee to avoid and recover the alleged Transfers, which commenced (Adv. No. 24-01296) (the "Adversary Proceeding").

F.    The Transferee vehemently disputes the Trustee's ability to avoid the Transfers, asserts that it possesses complete defenses, and would otherwise not be liable for the Transfers.

G.    The Trustee disputes certain of the value attributable to the Transferees' services, but concedes that the factual issues raised in Transferees defenses would be costly to prosecute through trial and the ultimate outcome of any trial on the merits is uncertain.

NOW, THEREFORE, in consideration of the foregoing facts and the terms, conditions, agreements, representations, and covenants set forth herein, the Parties agree as follows:

## AGREEMENT

1.    Settlement Payment. Within fourteen (14) business days from an Order of the Bankruptcy Court approving this Agreement becoming final and non-appealable (the "Approval Order"), and subject to entry of the Approval Order, the Transferee shall deliver to the Trustee the sum of $15,000 (the "Settlement Amount"), in full satisfaction of the claims related to the Transfers. The Settlement Amount shall be paid by check or wire as follows:

Payable to:      **Marc P. Barmat, Chapter 7 Trustee**

Delivered to:    **Marc P. Barmat, Trustee**
**Furr & Cohen, P.A.**
**2255 Glades Road, Suite 419 A**
**Boca Raton, Florida 33431**

2.      Release of Claims. Upon receipt of the Settlement Amount, (a) the Trustee, on behalf of the Debtor and the Debtor's estate, unconditionally releases and forever discharges the Transferee, their current and former partners, officers, directors, stockholders, members, managers, employees, agents, representatives, attorneys, predecessors, parents, subsidiaries, divisions, affiliates, successors, heirs, assigns, and insurance carriers, and all other persons, firms, corporations, associations, partnerships or entities, both known and unknown (the "Transferee Released Parties"), of and from all manner of actions, causes of action, suits, losses, damages, controversies, costs, interest, attorney's fees, penalties, rights, liabilities, debts, dues, bills, accounts, covenants, duties, contracts, agreements, promises, obligations, judgments, claims, rights of contribution or indemnification, demands and compensation, whether arising at law or equity, in tort or contract, or imposed by statute or common law, whether or not heretofore known, suspected or asserted, that the Trustee ever had or now has against said Transferee Released Parties **arising from or related to (i) the pre-Petition business relationship between the Debtor and the Transferee, (ii) the Bankruptcy Case, and (iii) the Adversary Proceeding**; and (b) the Transferee Released Parties shall be deemed to have released and forever discharged any claim or right against the Debtor, the Debtor's estate, the Trustee, and the Trustee's advisors and professionals (collectively, the "Trustee Released Parties") **arising from or related to (i) the pre-Petition business relationship between the Debtor and the Transferee, (ii) the Bankruptcy Case, (iii) the Adversary Proceeding, and (iv) the Trustee's administration of the Debtor's bankruptcy Estate**, including, but not limited to, the right to file a claim pursuant to 11 U.S.C. § 502(h) arising as a consequence of the Transferee's payment of the Settlement Amount and agree and acknowledge that Transferee shall be entitled to no claim against, or distribution from, the Debtor's bankruptcy estate. Notwithstanding the forgoing, neither the Transferee Released Parties nor the Trustee Released Parties are released from any obligations under the Agreement.

3.      Dismissal of Adversary Proceeding With Prejudice. Upon timely receipt of the Settlement Amount, the Trustee agrees to promptly file a voluntary dismissal of the Adversary Proceeding, with prejudice. Pending entry of the Approval Order, the Trustee agrees that the Transferee shall not be required to file a responsive pleading to the Adversary Complaint, and to the extent necessary, agrees to seek entry of an order of the Bankruptcy Court, in the Adversary Proceeding, enlarging Transferees' deadline to respond to the Complaint.

4.      Attorney Fees and Costs of Enforcement. The prevailing party shall be entitled to recover its reasonable court costs and attorneys' fees in connection with enforcement of the terms of this Agreement. The Parties understand and agree that each Party shall bear its own respective attorneys' fees and costs in connection with this dispute and this Agreement.

5.      Authority. Each Party signing this Agreement, and any other documents executed in connection with this Agreement, whether signed individually or on behalf of any person or entity, warrants and represents that he or she has full authority to so execute this Agreement on

behalf of the Party or Parties on whose behalf he or she so signs. Each Party signing this Agreement separately acknowledges and represents that this representation and warranty is an essential and material provision of this Agreement and will survive execution of this Agreement. Notwithstanding the foregoing, or anything contrary in this Agreement, this Agreement is subject to approval by the Bankruptcy Court pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure. In the event this Agreement is not approved by the Bankruptcy Court, then this Agreement shall be deemed null and void in its entirety, the Parties will be released of all obligations hereunder and the Parties shall be restored to their respective position as if this Agreement never existed.

6.      No Admission of Liability. Each of the Parties understands and agrees that this is a compromise of disputed claims made in order to avoid the significant costs and uncertainties of litigation and that the promises made in consideration of this Agreement are not and will not be construed to be an admission of any liability or facts whatsoever by any Party. By executing this Agreement, the Parties expressly deny any liability or fault related to their dispute.

7.      Entire Agreement. This Agreement contains the entire understanding and agreement between and among the Parties hereto with respect to the matters referred to herein. No other representations, covenants, undertakings, or other prior or contemporaneous agreements, oral or written, respecting such matters, which are not specifically incorporated herein, will be deemed in any way to exist or bind any of the Parties hereto. The Parties hereto acknowledge that each' Party has not executed this Agreement in reliance on any such promise, representation, or warranty not expressly contained in this Agreement.

8.      Binding on Successors, Assigns and Others. This Agreement and the covenants and conditions contained herein will apply to, be binding upon, and inure to the benefit of the Parties and the heirs, executors, administrators, conservators, Debtor, agents, legal representatives, successors, transferees, and assigns of the Parties hereto.

9.      Advice of Counsel. The Parties acknowledge that they have been (or have had the opportunity to be) represented by counsel of their own choice in the negotiations leading up to the execution of this Agreement and that they have read this Agreement and have had the opportunity to receive an explanation from legal counsel regarding the legal nature and effect of this Agreement, and each Party understands the terms and provisions of this Agreement and its nature and effect. Each Party further represents that they are entering into this Agreement freely and voluntarily, relying solely upon the advice of their own counsel if applicable, and not relying on representation of any other Party or of counsel for any other Party.

10.      Counterparts and Facsimiles. This Agreement may be executed in multiple counterparts, each of which will be deemed an original Agreement, and all of which will constitute one agreement. Any signature in counterpart provided by facsimile and/or by electronic mail with an Adobe PDF attachment of this Agreement shall be deemed an original signature.

11.      Meaning of Pronouns and Effect of Headings. As used in this Agreement and attached exhibits, if any the masculine, feminine, and/or neutral gender, in the singular or plural, will be deemed to include the others whenever the text so requires. The captions and paragraph

headings in this Agreement are inserted solely for convenience or reference and will not restrict, limit, or otherwise affect the meaning of the terms contained in this Agreement.

12.    Construction. This Agreement will be construed as if the Parties jointly participated in the preparation of this Agreement and any uncertainty and/or ambiguity will not be interpreted against any one particular Party.

13.    Enforcement and Jurisdiction. Each Party may enforce this Agreement as a valid contract, and may obtain any lawful remedy including injunctive relief enforcing the Agreement. The Parties irrevocably agree that the Bankruptcy Court, in the above-captioned case, has personal jurisdiction over the Parties, and shall retain sole and exclusive personal and subject matter jurisdiction to interpret, enforce and implement the terms of this Agreement.

14.    Modification. This Agreement cannot be modified or terminated except in a writing signed by all Parties.

15.    Approval Order. The Trustee agrees to promptly seek the entry of the Approval Order from the Bankruptcy Court.

16.    Best Efforts. The Parties shall use their best efforts to obtain Bankruptcy Court approval of this Agreement. Without limiting the foregoing, the Parties shall not take, or cause any persons or entities to take, any actions calculated or intended to decrease the likelihood of obtaining such approval.

17.    Further Cooperation. The Settlement Parties shall further cooperate with each other and execute any additional documents which are reasonable and necessary to achieve the settlement described herein

**Marc P. Barmat, in his capacity as Chapter 7 Trustee for the estate of the Debtor**

By: _____
        Marc P. Barmat, Trustee

**Arizona Endocrinology Center PLC**

By: _____
Name: _____ CHET. S. MONDER MD
As: _____ President _____

headings in this Agreement are inserted solely for convenience or reference and will not restrict, limit, or otherwise affect the meaning of the terms contained in this Agreement.

12.    Construction. This Agreement will be construed as if the Parties jointly participated in the preparation of this Agreement and any uncertainty and/or ambiguity will not be interpreted against any one particular Party.

13.    Enforcement and Jurisdiction. Each Party may enforce this Agreement as a valid contract, and may obtain any lawful remedy including injunctive relief enforcing the Agreement. The Parties irrevocably agree that the Bankruptcy Court, in the above-captioned case, has personal jurisdiction over the Parties, and shall retain sole and exclusive personal and subject matter jurisdiction to interpret, enforce and implement the terms of this Agreement.

14.    Modification. This Agreement cannot be modified or terminated except in a writing signed by all Parties.

15.    Approval Order. The Trustee agrees to promptly seek the entry of the Approval Order from the Bankruptcy Court.

16.    Best Efforts. The Parties shall use their best efforts to obtain Bankruptcy Court approval of this Agreement. Without limiting the foregoing, the Parties shall not take, or cause any persons or entities to take, any actions calculated or intended to decrease the likelihood of obtaining such approval.

17.    Further Cooperation. The Settlement Parties shall further cooperate with each other and execute any additional documents which are reasonable and necessary to achieve the settlement described herein

**Marc P. Barmat, in his capacity as Chapter 7 Trustee for the estate of the Debtor**

By: _____

Marc P. Barmat, Trustee

**Arizona Endocrinology Center PLC**

By: _____

Name: _____ CHET. S. MONDER MD

As: _____ President

Exhibit 2

Docusign Envelope ID: EFAA94C4-2EFC-4ACC-B10C-7A302AD0A8A6

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
(FORT LAUDERDALE DIVISION)
www.flsb.uscourts.gov

| | |
|---|---|
| In re | CASE NO. 22-13166-PDR |
| | CHAPTER 7 |
| GENEREX BIOTECHNOLOGY CORP., | |
|     Debtor. | |
| _____/ | |
| MARC P. BARMAT, Chapter 7 Trustee, | ADV. NO. 24-01271-PDR |
|     Plaintiff, | |
| v. | |
| MARK CORRAO, an individual, | |
|     Defendant. | |
| _____/ | |

## SETTLEMENT AGREEMENT

**THIS SETTLEMENT AGREEMENT** (the "Agreement") is made as of this 23rd day of September, 2024, and entered into by and between Marc P. Barmat, solely as Chapter 7 Trustee for the estate of the Debtor and not individually (the "Trustee" or "Plaintiff") and Mark Corrao (the "Transferee" or "Defendant"). The parties to this Agreement are collectively referred to as the "Parties" or singularly as a "Party."

## RECITALS

A.      On April 23, 2022 (the "Petition Date"), an involuntary petition was filed against the debtor, Generex Biotechnology Corp. (the "Debtor") in the United States Bankruptcy Court for the Southern District of Florida (the "Bankruptcy Court") for relief under Chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code"), which commenced Case No. 22-13166-PDR (the "Bankruptcy Case" or the "Main Case").

B.      On June 6, 2022, the Bankruptcy Court entered an order for relief.

C.      Plaintiff is the duly appointed and authorized Chapter 7 trustee of Debtor's estate.

D.      Prior to the Petition Date, the Debtor and the Transferee had a business relationship pursuant to which Transferee served as part-time Chief Financial Officer of the Debtor.

sf-5676028.1
75513517;1
DMS_US.366403817.1

Docusign Envelope ID: EFAA94C4-2EFC-4ACC-B10C-7A302AD0A8A6

E.       The Trustee alleges transfers made by the Debtor to the Transferee totaling $112,520.00 that the Trustee alleges are avoidable and recoverable under 11 U.S.C. §§ 544, 548, and 550 and Fla. Stat. §§ 726.105(1)(b), 726.106(1) (the "Complaint"). The transfers are referred to collectively as the "Transfers." The Trustee filed the above-captioned adversary proceeding on May 7, 2024, against the Transferee to, among other things, avoid and recover the alleged Transfers, which commenced the action (the "Adversary Proceeding").

F.       The Trustee subsequently threatened additional claims against the Transferee based on alleged breaches of fiduciary duty without specifying any sum for damages, and the Parties entered into a tolling agreement dated June 3, 2024, with respect to the Trustee's threatened claims (the "Tolling Agreement").

G.       The Transferee disputes the Trustee's ability to avoid and recover the Transfers or succeed on any other claims asserted in the Adversary Proceeding or that are subject to the Tolling Agreement and asserts that he possesses complete defenses and would otherwise not be liable to the Trustee.

H.       The Trustee disputes certain of the value attributable to the Transferees' services but concedes that the factual issues raised in Transferee's defenses would be costly to prosecute through trial and the ultimate outcome of any trial on the merits is uncertain.

I.       The Parties have exchanged information and negotiated at arms-length and in good faith in anticipation of a judicial settlement conference (the "JSC"), which was ultimately not held.

NOW, THEREFORE, in consideration of the foregoing facts and the terms, conditions, agreements, representations, and covenants set forth herein, the Parties agree as follows:

## AGREEMENT

1.       Settlement Payment. Within fourteen (14) business days from an Order of the Bankruptcy Court approving this Agreement becoming final and non-appealable (the "Approval Order"), and subject to entry of the Approval Order, the Transferee shall deliver to the Trustee the sum of $35,000.00 (the "Settlement Amount"), in full satisfaction of any and all claims that (i) were asserted or could have been asserted in the Adversary Proceeding and (ii) are subject to the Tolling Agreement . The Settlement Amount shall be paid by check or wire as follows:

Payable to:       **Marc P. Barmat, Chapter 7 Trustee**

Delivered to:     **Marc P. Barmat, Trustee**
                  **Furr & Cohen, P.A.**
                  **2255 Glades Road, Suite 419 A**
                  **Boca Raton, Florida 33431**

2.       Release of Claims.  Upon receipt of the Settlement Amount, (a) the Trustee, on behalf of the Debtor and the Debtor's estate, unconditionally releases and forever discharges the Transferee, his current and former partners, agents, representatives, attorneys, predecessors, successors, heirs, assigns, and insurance carriers, and all other persons, firms, corporations,

2

Docusign Envelope ID: EFAA94C4-2EFC-4ACC-B10C-7A302AD0A8A6

associations, partnerships or entities, both known and unknown (the "Transferee Released Parties"), of and from all manner of actions, causes of action, suits, losses, damages, controversies, costs, interest, attorney's fees, penalties, rights, liabilities, debts, dues, bills, accounts, covenants, duties, contracts, agreements, promises, obligations, judgments, claims, rights of contribution or indemnification, demands and compensation, whether arising at law or equity, in tort or contract, or imposed by statute or common law, whether or not heretofore known, suspected or asserted, that the Trustee ever had or now has against said Transferee Released Parties arising from or related to (i) the pre-Petition business relationship between the Debtor and the Transferee, (ii) the Bankruptcy Case, (iii) the Adversary Proceeding, and (iv) the Tolling Agreement; and (b) the Transferee Released Parties shall be deemed to have released and forever discharged any claim or right against the Debtor, the Debtor's estate, the Trustee, and the Trustee's advisors and professionals (collectively, the "Trustee Released Parties") arising from or related to (i) the pre-Petition business relationship between the Debtor and the Transferee, (ii) the Bankruptcy Case, (iii) the Adversary Proceeding, (iv) the Tolling Agreement, and (v) the Trustee's administration of the Debtor's bankruptcy Estate, including, but not limited to, the right to file a claim pursuant to 11 U.S.C. § 502(h) arising as a consequence of the Transferee's payment of the Settlement Amount and agree and acknowledge that Transferee shall be entitled to no claim against, or distribution from, the Debtor's bankruptcy estate.  Notwithstanding the forgoing, neither the Transferee Released Parties nor the Trustee Released Parties are released from any obligations under the Agreement.

3.      Dismissal of Adversary Proceeding With Prejudice. Upon timely receipt of the Settlement Amount, the Trustee agrees to promptly file a voluntary dismissal of the Adversary Proceeding, with prejudice. Pending entry of the Approval Order, the Trustee agrees that the Transferee shall not be required to file a responsive pleading to the Adversary Complaint, and to the extent necessary, agrees to seek entry of an order of the Bankruptcy Court, in the Adversary Proceeding, enlarging Transferees' deadline to respond to the Complaint.

4.      Attorney Fees and Costs of Enforcement.  The prevailing party shall be entitled to recover its reasonable court costs and attorneys' fees in connection with enforcement of the terms of this Agreement. The Parties understand and agree that each Party shall bear its own respective attorneys' fees and costs in connection with this dispute, and this Agreement, and the JSC (if any).

5.      Authority. Each Party signing this Agreement, and any other documents executed in connection with this Agreement, whether signed individually or on behalf of any person or entity, warrants and represents that he or she has full authority to so execute this Agreement on behalf of the Party or Parties on whose behalf he or she so signs.  Each Party signing this Agreement separately acknowledges and represents that this representation and warranty is an essential and material provision of this Agreement and will survive execution of this Agreement. Notwithstanding the foregoing, or anything contrary in this Agreement, this Agreement is subject to approval by the Bankruptcy Court pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure.  In the event this Agreement is not approved by the Bankruptcy Court, then this Agreement shall be deemed null and void in its entirety, the Parties will be released of all obligations hereunder and the Parties shall be restored to their respective position as if this Agreement never existed.

Docusign Envelope ID: EFAA94C4-2EFC-4ACC-B10C-7A302AD0A8A6

6.    No Admission of Liability. Each of the Parties understands and agrees that this is a compromise of disputed claims made in order to avoid the significant costs and uncertainties of litigation and that the promises made in consideration of this Agreement are not and will not be construed to be an admission of any liability or facts whatsoever by any Party. By executing this Agreement, the Parties expressly deny any liability or fault related to their dispute.

7.    Entire Agreement. This Agreement contains the entire understanding and agreement between and among the Parties hereto with respect to the matters referred to herein. No other representations, covenants, undertakings, or other prior or contemporaneous agreements, oral or written, respecting such matters, which are not specifically incorporated herein, will be deemed in any way to exist or bind any of the Parties hereto. The Parties hereto acknowledge that each Party has not executed this Agreement in reliance on any such promise, representation, or warranty not expressly contained in this Agreement.

8.    Binding on Successors, Assigns and Others. This Agreement and the covenants and conditions contained herein will apply to, be binding upon, and inure to the benefit of the Parties and the heirs, executors, administrators, conservators, Debtor, agents, legal representatives, successors, transferees, and assigns of the Parties hereto.

9.    Advice of Counsel. The Parties acknowledge that they have been (or have had the opportunity to be) represented by counsel of their own choice in the negotiations leading up to the execution of this Agreement and that they have read this Agreement and have had the opportunity to receive an explanation from legal counsel regarding the legal nature and effect of this Agreement, and each Party understands the terms and provisions of this Agreement and its nature and effect. Each Party further represents that they are entering into this Agreement freely and voluntarily, relying solely upon the advice of their own counsel if applicable, and not relying on representation of any other Party or of counsel for any other Party.

10.    Confidentiality. The Parties acknowledge and agree that the discussions, communications (both written and verbal) and documents shared between the Parties in connection with the JSC, including, without limitation, all communications in connection with the settlement of the claims that were asserted or that could have been asserted in the Adversary Proceeding or that are subject to the Tolling Agreement, are strictly confidential, and may not be disclosed to any third party without the prior written consent of all the Parties; provided, however, that the Parties may disclose the terms of this Agreement to their professional advisors and among members of management, officers, directors, auditors, and any other company officials to the extent required by business necessity to implement the provisions of this Agreement, or as otherwise required by law.

11.    Counterparts and Facsimiles. This Agreement may be executed in multiple counterparts, each of which will be deemed an original Agreement, and all of which will constitute one agreement. Any signature in counterpart provided by facsimile and/or by electronic mail with an Adobe PDF attachment of this Agreement shall be deemed an original signature.

12.    Meaning of Pronouns and Effect of Headings. As used in this Agreement and attached exhibits, if any the masculine, feminine, and/or neutral gender, in the singular or plural, will be deemed to include the others whenever the text so requires. The captions and paragraph

Docusign Envelope ID: EFAA94C4-2EFC-4ACC-B10C-7A302AD0A8A6

headings in this Agreement are inserted solely for convenience or reference and will not restrict, limit, or otherwise affect the meaning of the terms contained in this Agreement.

13.    Construction. This Agreement will be construed as if the Parties jointly participated in the preparation of this Agreement and any uncertainty and/or ambiguity will not be interpreted against any one particular Party.

14.    Enforcement and Jurisdiction. Each Party may enforce this Agreement as a valid contract, and may obtain any lawful remedy including injunctive relief enforcing the Agreement. The Parties irrevocably agree that the Bankruptcy Court, in the above-captioned case, has personal jurisdiction over the Parties, and shall retain sole and exclusive personal and subject matter jurisdiction to interpret, enforce and implement the terms of this Agreement.

15.    Modification. This Agreement cannot be modified or terminated except in a writing signed by all Parties.

16.    Approval Order. The Trustee agrees to promptly seek the entry of the Approval Order from the Bankruptcy Court.

17.    Best Efforts. The Parties shall use their best efforts to obtain Bankruptcy Court approval of this Agreement. Without limiting the foregoing, the Parties shall not take, or cause any persons or entities to take, any actions calculated or intended to decrease the likelihood of obtaining such approval.

18.    Additional Documents. The Settlement Parties shall further cooperate with each other and execute any additional documents which are reasonable and necessary to achieve the settlement described herein

19.    Litigation and Investigation Cooperation. Defendant agrees to cooperate with the Trustee by, *inter alia*, making himself available to be interviewed by the Trustee and his counsel, to provide truthful testimony through affidavits or declarations under penalty of perjury, and to accept service of subpoenas for and at any hearing, trial, or his own scheduled deposition with reasonable travel, lodging, and other related expenses incurred up to $5,000.00 to be paid and/or reimbursed to Defendant by the Trustee on behalf of the estate, without prejudice for the Trustee to seek authority to increase the $5,000.00 cap as necessary or appropriate.

**Marc P. Barmat, in his capacity**          **Mark Corrao**
**as Chapter 7 Trustee for the**
**estate of the Debtor**

By: _____          By: _____
   Marc P. Barmat, Trustee                  Mark Corrao

5

Exhibit 3

## SETTLEMENT AGREEMENT

**THIS SETTLEMENT AGREEMENT** (the "Agreement") is made as of 10/1/2024, and entered into by and between Marc P. Barmat, solely as Chapter 7 Trustee for the estate of the Debtor and not individually (the "Trustee") and NSABP Foundation Inc ( the "Transferee"). The parties to this Agreement are collectively referred to as the "Parties" or singularly as a "Party."

## RECITALS

A.    On April 23, 2022 (the "Petition Date"), an involuntary petition was filed against the debtor, Generex Biotechnology Corp. (the "Debtor") in the United States Bankruptcy Court for the Southern District of Florida (the "Bankruptcy Court") for relief under Chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code"), which commenced Case No. 22-13166-PDR (the "Bankruptcy Case" or the "Main Case").

B.    On June 6, 2022, the Bankruptcy Court entered an order for relief.

C.    Plaintiff is the duly appointed and authorized Chapter 7 trustee of Debtor's estate.

D.    Prior to the Petition Date, the Debtor and the Transferee had a business relationship.

E.    The Trustee alleges transfers in the approximate amount of $693,245.00 made by the Debtor to the Transferee that the Trustee alleges are avoidable and recoverable under 11 U.S.C. §§ 502, 544 550 and Fla. Stat. §§ 726.105(1)(b), 726.106(1) (the "Complaint"). The transfers are referred to collectively as the "Transfers." The Trustee filed an adversary proceeding on June 3, 2024 against the Transferee to avoid and recover the alleged Transfers, which commenced (Adv. No. 24-01311) (the "Adversary Proceeding").

F.    The Transferee vehemently disputes the Trustee's ability to avoid the Transfers, asserts that it possesses complete defenses, and would otherwise not be liable for the Transfers. The defenses asserted by the Transferee, include: (i) that the Transferee provided reasonably equivalent value for each of the transfers in the nature of services provided to the Debtor in accordance with the contractual terms between the Debtor and the Transferee; (ii) that the services rendered to the Debtor by the Transferee equal or exceed the value of the Transfers; and (iii) at all times alleged in the Complaint, the Transferee accepted the Transfers in good faith.

G.    The Trustee disputes certain of the value attributable to the Transferees' services, but concedes that the factual issues raised in Transferees defenses would be costly to prosecute through trial and the ultimate outcome of any trial on the merits is uncertain.

NOW, THEREFORE, in consideration of the foregoing facts and the terms, conditions, agreements, representations, and covenants set forth herein, the Parties agree as follows:

## AGREEMENT

1.    <u>Settlement Payment</u>. Within fourteen (14) business days from an Order of the Bankruptcy Court approving this Agreement becoming final and non-appealable (the "Approval

sf-5676028.1
75513517;1

Order"), and subject to entry of the Approval Order, the Transferee shall deliver to the Trustee the sum of $35,000.00 (the "Settlement Amount"), in full satisfaction of the claims related to the Transfers. The Settlement Amount shall be paid by check or wire as follows:

Payable to:      **Marc P. Barmat, Chapter 7 Trustee**

Delivered to:    **Marc P. Barmat, Trustee**
                 **Furr & Cohen, P.A.**
                 **2255 Glades Road, Suite 419 A**
                 **Boca Raton, Florida 33431**

2.      Release of Claims.  Upon receipt of the Settlement Amount, (a) the Trustee, on behalf of the Debtor and the Debtor's estate, unconditionally releases and forever discharges the Transferee, their current and former partners, officers, directors, stockholders, members, managers, employees, agents, representatives, attorneys, predecessors, parents, subsidiaries, divisions, affiliates, successors, heirs, assigns, and insurance carriers, and all other persons, firms, corporations, associations, partnerships or entities, both known and unknown (the "Transferee Released Parties"), of and from all manner of actions, causes of action, suits, losses, damages, controversies, costs, interest, attorney's fees, penalties, rights, liabilities, debts, dues, bills, accounts, covenants, duties, contracts, agreements, promises, obligations, judgments, claims, rights of contribution or indemnification, demands and compensation, whether arising at law or equity, in tort or contract, or imposed by statute or common law, whether or not heretofore known, suspected or asserted, that the Trustee ever had or now has against said Transferee Released Parties **arising from or related to (i) the pre-Petition business relationship between the Debtor and the Transferee, (ii) the Bankruptcy Case, and (iii) the Adversary Proceeding**; and (b) the Transferee Released Parties shall be deemed to have released and forever discharged any claim or right against the Debtor, the Debtor's estate, the Trustee, and the Trustee's advisors and professionals (collectively, the "Trustee Released Parties") **arising from or related to (i) the pre-Petition business relationship between the Debtor and the Transferee, (ii) the Bankruptcy Case, (iii) the Adversary Proceeding, and (iv) the Trustee's administration of the Debtor's bankruptcy Estate**, including, but not limited to, the right to file a claim pursuant to 11 U.S.C. § 502(h) arising as a consequence of the Transferee's payment of the Settlement Amount and agree and acknowledge that Transferee shall be entitled to no claim against, or distribution from, the Debtor's bankruptcy estate. Notwithstanding the forgoing, neither the Transferee Released Parties nor the Trustee Released Parties are released from of any obligations under the Agreement.

3.      Dismissal of Adversary Proceeding With Prejudice. Upon timely receipt of the Settlement Amount, the Trustee agrees to promptly file a voluntary dismissal of the Adversary Proceeding, with prejudice. Pending entry of the Approval Order, the Trustee agrees that the Transferee shall not be required to file a responsive pleading to the Adversary Complaint, and to the extent necessary, agrees to seek entry of an order of the Bankruptcy Court, in the Adversary Proceeding, enlarging Transferees' deadline to respond to the Complaint.

4.      Attorney Fees and Costs of Enforcement. The prevailing party shall be entitled to recover its reasonable court costs and attorneys' fees in connection with enforcement of the terms of this Agreement. The Parties understand and agree that each Party shall bear its own respective attorneys' fees and costs in connection with this dispute and this Agreement.

sf-5676028.1
75513517;1

5.     Authority. Each Party signing this Agreement, and any other documents executed in connection with this Agreement, whether signed individually or on behalf of any person or entity, warrants and represents that he or she has full authority to so execute this Agreement on behalf of the Party or Parties on whose behalf he or she so signs. Each Party signing this Agreement separately acknowledges and represents that this representation and warranty is an essential and material provision of this Agreement and will survive execution of this Agreement. Notwithstanding the foregoing, or anything contrary in this Agreement, this Agreement is subject to approval by the Bankruptcy Court pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure. In the event this Agreement is not approved by the Bankruptcy Court, then this Agreement shall be deemed null and void in its entirety, the Parties will be released of all obligations hereunder and the Parties shall be restored to their respective position as if this Agreement never existed.

6.     No Admission of Liability. Each of the Parties understands and agrees that this is a compromise of disputed claims made in order to avoid the significant costs and uncertainties of litigation and that the promises made in consideration of this Agreement are not and will not be construed to be an admission of any liability or facts whatsoever by any Party. By executing this Agreement, the Parties expressly deny any liability or fault related to their dispute.

7.     Entire Agreement. This Agreement contains the entire understanding and agreement between and among the Parties hereto with respect to the matters referred to herein. No other representations, covenants, undertakings, or other prior or contemporaneous agreements, oral or written, respecting such matters, which are not specifically incorporated herein, will be deemed in any way to exist or bind any of the Parties hereto. The Parties hereto acknowledge that each Party has not executed this Agreement in reliance on any such promise, representation, or warranty not expressly contained in this Agreement.

8.     Binding on Successors, Assigns and Others. This Agreement and the covenants and conditions contained herein will apply to, be binding upon, and inure to the benefit of the Parties and the heirs, executors, administrators, conservators, Debtor, agents, legal representatives, successors, transferees, and assigns of the Parties hereto.

9.     Advice of Counsel. The Parties acknowledge that they have been (or have had the opportunity to be) represented by counsel of their own choice in the negotiations leading up to the execution of this Agreement and that they have read this Agreement and have had the opportunity to receive an explanation from legal counsel regarding the legal nature and effect of this Agreement, and each Party understands the terms and provisions of this Agreement and its nature and effect. Each Party further represents that they are entering into this Agreement freely and voluntarily, relying solely upon the advice of their own counsel if applicable, and not relying on representation of any other Party or of counsel for any other Party.

10.    Counterparts and Facsimiles. This Agreement may be executed in multiple counterparts, each of which will be deemed an original Agreement, and all of which will constitute one agreement. Any signature in counterpart provided by facsimile and/or by electronic mail with an Adobe PDF attachment of this Agreement shall be deemed an original signature.

11. **Meaning of Pronouns and Effect of Headings.** As used in this Agreement and attached exhibits, if any the masculine, feminine, and/or neutral gender, in the singular or plural, will be deemed to include the others whenever the text so requires. The captions and paragraph headings in this Agreement are inserted solely for convenience or reference and will not restrict, limit, or otherwise affect the meaning of the terms contained in this Agreement.

12. **Construction.** This Agreement will be construed as if the Parties jointly participated in the preparation of this Agreement and any uncertainty and/or ambiguity will not be interpreted against any one particular Party.

13. **Enforcement and Jurisdiction.** Each Party may enforce this Agreement as a valid contract, and may obtain any lawful remedy including injunctive relief enforcing the Agreement. The Parties irrevocably agree that the Bankruptcy Court, in the above-captioned case, has personal jurisdiction over the Parties, and shall retain sole and exclusive personal and subject matter jurisdiction to interpret, enforce and implement the terms of this Agreement.

14. **Modification.** This Agreement cannot be modified or terminated except in a writing signed by all Parties.

15. **Approval Order.** The Trustee agrees to promptly seek the entry of the Approval Order from the Bankruptcy Court.

16. **Best Efforts.** The Parties shall use their best efforts to obtain Bankruptcy Court approval of this Agreement. Without limiting the foregoing, the Parties shall not take, or cause any persons or entities to take, any actions calculated or intended to decrease the likelihood of obtaining such approval.

17. **Further Cooperation.** The Settlement Parties shall further cooperate with each other and execute any additional documents which are reasonable and necessary to achieve the settlement described herein

**Marc P. Barmat, in his capacity as Chapter 7 Trustee for the estate of the Debtor**

By: _____
    Marc P. Barmat, Trustee

**NSABP Foundation Inc**

By: _____
Name: Ronald A. Sugar
As: CFO

Exhibit 4

## SETTLEMENT AGREEMENT

**THIS SETTLEMENT AGREEMENT** (the "Agreement") is made as of September 16, 2024, and entered into by and between Marc P. Barmat, solely as Chapter 7 Trustee for the estate of the Debtor and not individually (the "Trustee") and Shore Research & Development, LLC ( the "Transferee"). The parties to this Agreement are collectively referred to as the "Parties" or singularly as a "Party."

## RECITALS

A.      On April 23, 2022 (the "Petition Date"), an involuntary petition was filed against the debtor, Generex Biotechnology Corp. (the "Debtor") in the United States Bankruptcy Court for the Southern District of Florida (the "Bankruptcy Court") for relief under Chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code"), which commenced Case No. 22-13166-PDR (the "Bankruptcy Case" or the "Main Case").

B.      On June 6, 2022, the Bankruptcy Court entered an order for relief.

C.      Plaintiff is the duly appointed and authorized Chapter 7 trustee of Debtor's estate.

D.      Prior to the Petition Date, the Debtor and the Transferee had a business relationship.

E.      The Trustee alleges transfers in the approximate amount of $92,060.00 made by the Debtor to the Transferee that the Trustee alleges are avoidable and recoverable under 11 U.S.C. §§ 502, 544 550 and Fla. Stat. §§ 726.105(1)(b), 726.106(1) (the "Complaint"). The transfers are referred to collectively as the "Transfers." The Trustee filed an adversary proceeding on June 2, 2024 against the Transferee to avoid and recover the alleged Transfers, which commenced (Adv. No. 24-01306-PDR) (the "Adversary Proceeding").

F.      The Transferee vehemently disputes the Trustee's ability to avoid the Transfers, asserts that it possesses complete defenses, and would otherwise not be liable for the Transfers. The defenses asserted by the Transferee, include: (i) that the Transferee provided reasonably equivalent value for each of the transfers in the nature of services provided to the Debtor in accordance with the contractual terms between the Debtor and the Transferee; (ii) that the services rendered to the Debtor by the Transferee equal or exceed the value of the Transfers; and (iii) at all times alleged in the Complaint, the Transferee accepted the Transfers in good faith.

G.      The Trustee disputes certain of the value attributable to the Transferees' services, but concedes that the factual issues raised in Transferees defenses would be costly to prosecute through trial and the ultimate outcome of any trial on the merits is uncertain.

NOW, THEREFORE, in consideration of the foregoing facts and the terms, conditions, agreements, representations, and covenants set forth herein, the Parties agree as follows:

## AGREEMENT

1.      Settlement Payment. Within fourteen (14) business days from an Order of the Bankruptcy Court approving this Agreement becoming final and non-appealable (the "Approval

sf-5676028.1
75513517;1

Order"), and subject to entry of the Approval Order, the Transferee shall deliver to the Trustee the sum of **$9,000** (the "Settlement Amount"), in full satisfaction of the claims related to the Transfers. The Settlement Amount shall be paid by check or wire as follows:

Payable to: **Marc P. Barmat, Chapter 7 Trustee**

Delivered to: **Marc P. Barmat, Trustee**
**Furr & Cohen, P.A.**
**2255 Glades Road, Suite 419 A**
**Boca Raton, Florida 33431**

2. Release of Claims. Upon receipt of the Settlement Amount, (a) the Trustee, on behalf of the Debtor and the Debtor's estate, unconditionally releases and forever discharges the Transferee, their current and former partners, officers, directors, stockholders, members, managers, employees, agents, representatives, attorneys, predecessors, parents, subsidiaries, divisions, affiliates, successors, heirs, assigns, and insurance carriers, and all other persons, firms, corporations, associations, partnerships or entities, both known and unknown (the "Transferee Released Parties"), of and from all manner of actions, causes of action, suits, losses, damages, controversies, costs, interest, attorney's fees, penalties, rights, liabilities, debts, dues, bills, accounts, covenants, duties, contracts, agreements, promises, obligations, judgments, claims, rights of contribution or indemnification, demands and compensation, whether arising at law or equity, in tort or contract, or imposed by statute or common law, whether or not heretofore known, suspected or asserted, that the Trustee ever had or now has against said Transferee Released Parties **arising from or related to (i) the pre-Petition business relationship between the Debtor and the Transferee, (ii) the Bankruptcy Case, and (iii) the Adversary Proceeding**; and (b) the Transferee Released Parties shall be deemed to have released and forever discharged any claim or right against the Debtor, the Debtor's estate, the Trustee, and the Trustee's advisors and professionals (collectively, the "Trustee Released Parties") **arising from or related to (i) the pre-Petition business relationship between the Debtor and the Transferee, (ii) the Bankruptcy Case, (iii) the Adversary Proceeding, and (iv) the Trustee's administration of the Debtor's bankruptcy Estate**, including, but not limited to, the right to file a claim pursuant to 11 U.S.C. § 502(h) arising as a consequence of the Transferee's payment of the Settlement Amount and agree and acknowledge that Transferee shall be entitled to no claim against, or distribution from, the Debtor's bankruptcy estate. Notwithstanding the forgoing, neither the Transferee Released Parties nor the Trustee Released Parties are released from of any obligations under the Agreement.

3. Dismissal of Adversary Proceeding With Prejudice. Upon timely receipt of the Settlement Amount, the Trustee agrees to promptly file a voluntary dismissal of the Adversary Proceeding, with prejudice. Pending entry of the Approval Order, the Trustee agrees that the Transferee shall not be required to file a responsive pleading to the Adversary Complaint, and to the extent necessary, agrees to seek entry of an order of the Bankruptcy Court, in the Adversary Proceeding, enlarging Transferees' deadline to respond to the Complaint.

4. Attorney Fees and Costs of Enforcement. The prevailing party shall be entitled to recover its reasonable court costs and attorneys' fees in connection with enforcement of the terms of this Agreement. The Parties understand and agree that each Party shall bear its own respective attorneys' fees and costs in connection with this dispute and this Agreement.

sf-5676028.1
75513517;1

5.      Authority.  Each Party signing this Agreement, and any other documents executed in connection with this Agreement, whether signed individually or on behalf of any person or entity, warrants and represents that he or she has full authority to so execute this Agreement on behalf of the Party or Parties on whose behalf he or she so signs.  Each Party signing this Agreement separately acknowledges and represents that this representation and warranty is an essential and material provision of this Agreement and will survive execution of this Agreement. Notwithstanding the foregoing, or anything contrary in this Agreement, this Agreement is subject to approval by the Bankruptcy Court pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure.  In the event this Agreement is not approved by the Bankruptcy Court, then this Agreement shall be deemed null and void in its entirety, the Parties will be released of all obligations hereunder and the Parties shall be restored to their respective position as if this Agreement never existed.

6.      No Admission of Liability.  Each of the Parties understands and agrees that this is a compromise of disputed claims made in order to avoid the significant costs and uncertainties of litigation and that the promises made in consideration of this Agreement are not and will not be construed to be an admission of any liability or facts whatsoever by any Party. By executing this Agreement, the Parties expressly deny any liability or fault related to their dispute.

7.      Entire Agreement.  This Agreement contains the entire understanding and agreement between and among the Parties hereto with respect to the matters referred to herein.  No other representations, covenants, undertakings, or other prior or contemporaneous agreements, oral or written, respecting such matters, which are not specifically incorporated herein, will be deemed in any way to exist or bind any of the Parties hereto. The Parties hereto acknowledge that each Party has not executed this Agreement in reliance on any such promise, representation, or warranty not expressly contained in this Agreement.

8.      Binding on Successors, Assigns and Others.  This Agreement and the covenants and conditions contained herein will apply to, be binding upon, and inure to the benefit of the Parties and the heirs, executors, administrators, conservators, Debtor, agents, legal representatives, successors, transferees, and assigns of the Parties hereto.

9.      Advice of Counsel.  The Parties acknowledge that they have been (or have had the opportunity to be) represented by counsel of their own choice in the negotiations leading up to the execution of this Agreement and that they have read this Agreement and have had the opportunity to receive an explanation from legal counsel regarding the legal nature and effect of this Agreement, and each Party understands the terms and provisions of this Agreement and its nature and effect. Each Party further represents that they are entering into this Agreement freely and voluntarily, relying solely upon the advice of their own counsel if applicable, and not relying on representation of any other Party or of counsel for any other Party.

10.     Counterparts and Facsimiles.  This Agreement may be executed in multiple counterparts, each of which will be deemed an original Agreement, and all of which will constitute one agreement. Any signature in counterpart provided by facsimile and/or by electronic mail with an Adobe PDF attachment of this Agreement shall be deemed an original signature.



sf-5676028.1
75513517;1

11.   Meaning of Pronouns and Effect of Headings.  As used in this Agreement and attached exhibits, if any the masculine, feminine, and/or neutral gender, in the singular or plural, will be deemed to include the others whenever the text so requires. The captions and paragraph headings in this Agreement are inserted solely for convenience or reference and will not restrict, limit, or otherwise affect the meaning of the terms contained in this Agreement.

12.   Construction. This Agreement will be construed as if the Parties jointly participated in the preparation of this Agreement and any uncertainty and/or ambiguity will not be interpreted against any one particular Party.

13.   Enforcement and Jurisdiction.  Each Party may enforce this Agreement as a valid contract, and may obtain any lawful remedy including injunctive relief enforcing the Agreement. The Parties irrevocably agree that the Bankruptcy Court, in the above-captioned case, has personal jurisdiction over the Parties, and shall retain sole and exclusive personal and subject matter jurisdiction to interpret, enforce and implement the terms of this Agreement.

14.   Modification. This Agreement cannot be modified or terminated except in a writing signed by all Parties.

15.   Approval Order. The Trustee agrees to promptly seek the entry of the Approval Order from the Bankruptcy Court.

16.   Best Efforts. The Parties shall use their best efforts to obtain Bankruptcy Court approval of this Agreement. Without limiting the foregoing, the Parties shall not take, or cause any persons or entities to take, any actions calculated or intended to decrease the likelihood of obtaining such approval.

17.   Further Cooperation. The Settlement Parties shall further cooperate with each other and execute any additional documents which are reasonable and necessary to achieve the settlement described herein

**Marc P. Barmat, in his capacity as Chapter 7 Trustee for the estate of the Debtor**

By: _____
        Marc P. Barmat, Trustee

**Shore Research & Development, LLC**

By: _John P. Hall_____
Name: _John P. Hall_
As: _President of Shore Research + Development, LLC_

11.     Meaning of Pronouns and Effect of Headings. As used in this Agreement and attached exhibits, if any the masculine, feminine, and/or neutral gender, in the singular or plural, will be deemed to include the others whenever the text so requires. The captions and paragraph headings in this Agreement are inserted solely for convenience or reference and will not restrict, limit, or otherwise affect the meaning of the terms contained in this Agreement.

12.     Construction. This Agreement will be construed as if the Parties jointly participated in the preparation of this Agreement and any uncertainty and/or ambiguity will not be interpreted against any one particular Party.

13.     Enforcement and Jurisdiction. Each Party may enforce this Agreement as a valid contract, and may obtain any lawful remedy including injunctive relief enforcing the Agreement. The Parties irrevocably agree that the Bankruptcy Court, in the above-captioned case, has personal jurisdiction over the Parties, and shall retain sole and exclusive personal and subject matter jurisdiction to interpret, enforce and implement the terms of this Agreement.

14.     Modification. This Agreement cannot be modified or terminated except in a writing signed by all Parties.

15.     Approval Order. The Trustee agrees to promptly seek the entry of the Approval Order from the Bankruptcy Court.

16.     Best Efforts. The Parties shall use their best efforts to obtain Bankruptcy Court approval of this Agreement. Without limiting the foregoing, the Parties shall not take, or cause any persons or entities to take, any actions calculated or intended to decrease the likelihood of obtaining such approval.

17.     Further Cooperation. The Settlement Parties shall further cooperate with each other and execute any additional documents which are reasonable and necessary to achieve the settlement described herein

**Marc P. Barmat, in his capacity as Chapter 7 Trustee for the estate of the Debtor**

By: _____
        Marc P. Barmat, Trustee

**Shore Research & Development, LLC**

By: _____

Name: John P. Hall

As: President of Shore Research + Developmel, LLC

sf-5676028.1
75513517;1

Exhibit 5

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

IN RE:

Case No. 22-bk-13166-PDR

GENEREX BIOTECHNOLOGY CORP.

Chapter 7

       Debtor.

_____/

**ORDER GRANTING TRUSTEE'S MOTION TO**
**COMPROMISE CONTROVERSY BETWEEN TRUSTEE**
**AND ARIZONA  ENDOCRINOLOGY CENTER PLLC; MARK CORRAO;**
**NSABP FOUNDATION, Inc., SHORE RESEARCH AND DEVELOPMENT**

**THIS MATTER** came before the Court upon the *Omnibus Motion to Approve Compromise of Controversy* ("Motion") (ECF No. __).[1]  The Court, having reviewed the Motion and the record in this case, having been duly advised in the premises, having noted that the Motion was properly served, having noted that no objections were asserted against the relief requested in the Motion, and having found that based on the record before the Court that the Settlement

---

[1] All capitalized terms not otherwise defined herein shall have the meaning set forth in the Motion.

78219815;1

Agreements satisfy the factors enumerated in *In re Justice Oaks, II, Ltd.*, 898 F.2d 1544, 1549 (11th Cir.), *cert. denied*, 498 U.S. 959 (1990), and that therefore the Trustee's business judgment is prudent in entering into the Settlement Agreements between the Trustee, on the one hand, and (1) Arizona Endocrinology Center PLC, (2) Mark Corrao, (3) NSABP Foundation, Inc.,and (4) Shore Research and Development on the other hand, attached to the Motion as **Exhibits 1, 2, 3, and 4** (the "Settlement Agreements").  The Court hereby finds that good cause exists to grant the relief requested in the Motion, and

      **ORDERS AND ADJUDGES** as follows**:**

1.     The Motion is **GRANTED,** and the Settlement Agreements are hereby **APPROVED** and incorporated herein in their entirety.

2.     The Trustee is authorized to take any and all action necessary to consummate the Settlement Agreements.

3.     The Court retains jurisdiction to interpret, enforce and implement the terms of these Settlement Agreements.

# # #

Submitted by:

Eyal Berger, Esq.
eyal.berger@akerman.com
**AKERMAN LLP**
201 East Las Olas Boulevard, Suite 1800
Fort Lauderdale, FL 33301-2999
Tel: 954-463-2700
Fax: 954-463-2224
*Counsel for the Trustee, Marc P. Barmat*

Attorney Berger is directed to serve copies of this Order upon all interested parties and to file a certificate of service with the Court.

2

78219815;1